[Civ. No. 11036. Fourth Dist., Div. One. Mar. 17, 1972.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
LEADERSHIP HOUSING SYSTEMS, INC., Defendant and Appellant.

166

---

**COUNSEL**

Asaro, Featherman & Keagy and Roscoe D. Keagy for Defendant and Appellant.

Harry S. Fenton, Richard G. Rypinski, Sherman E. Hollingsworth, Dale Peterson, and Judith McConnell for Plaintiff and Respondent.

## OPINION

**COUGHLIN, J.**\*—Defendant was the owner of 36.87 acres of real property taken by plaintiff, through eminent domain proceedings, for highway purposes, and appeals from the judgment awarding it $511,900 as compensation for the property taken and $50,000 as severance damages.

The property taken was part of a larger parcel of 43.26 acres defendant acquired for $378,437.50, pursuant to a sales transaction which included the execution of an escrow agreement on September 18, 1969, the payment into escrow of a part of the purchase price sometime in December 1969, and completion of the escrow with recording of a deed on December 31, 1969; and upon which it was constructing a mobile home park. The eminent domain action was commenced March 23, 1970, which is the valuation date. On this date the project was partially completed; the land had been graded; and some of the improvements had been installed.

At the trial Thomas L. Roberts and Robert Steele testified as appraisers for defendant; John Cotton testified as appraiser for plaintiff; Cotton and Steele testified the construction work on the project, on the valuation date, was 25 percent completed; and Roberts testified it was 33⅓ percent completed. Roberts' market value appraisal of the property taken, including the improvements thereon, was $744,580, and his severance damage appraisal was $99,045; Steele's appraisals thereof were, respectively, $732,125 and $101,875; and Cotton's appraisals thereof were, respectively, $511,900 and $31,600. The jury found the market value of the property taken, including improvements, was $511,900, i.e., the amount of Cotton's appraisal, and severance damage was $50,000, i.e., $18,400 in excess of Cotton's appraisal.

The issues on appeal are premised upon claimed errors in rulings by the trial court (1) denying defendant's motion to strike the appraisal opinions of Cotton and (2) requiring defendant, in effect, to produce evidence of actual costs, in lieu of estimated costs, as a basis for the admission of exhibits prepared by defendant's appraisers setting forth cost items considered in a cost of improvements study.

Cotton testified, in arrivng at his opinion of market value he relied upon a summation study which included an analysis of land value by the comparative process, an analysis of depreciated replacement cost of the incomplete improvements on the property, and a consideration of their overall

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

value as an indicator of final valuation. In other words, in arriving at his conclusion, Cotton considered a study in two parts, one of which involved comparative land values and the other cost of improvements. On cross-examination defendant elicited the fact Cotton, in his cost of improvements study, did not consider certain items of profit it claims are basic to a determination of the cost of improvements. This claim is premised upon the contention "the law requires an assumption that the buyer under the facts would be willing to pay for the value of the time, effort, expertise and risk undertaken by the seller because these matters must of necessity bear upon the value of the subject property in its condition on the date of value." Defendant claims it acquired the property on the date of execution of the escrow agreement, i.e., September 18, 1969, and on date of valuation had furnished a minimum of six months of "work, services, expertise and risk" in the development of the property the value of which constitutes a profit which should be included in determining the cost of the improvements.

Cotton testified his cost of improvements study involved a determination of the replacement cost to construct the improvements which were on the property at the date of valuation; included a consideration of "everything that went into the construction work or the engineering work relating to the construction of a mobile home park; architectural and certain items of advanced planning which had been paid for and incorporated in the plan, including some work that was not even started; . . . also allowances for such matters as travel cost, accounting, fees, legal fees, . . . and various other miscellaneous items"; and also included a consideration of other items described in his testimony as follows: ". . . whatever you want to call it, whether you want to call it profit or whether you want to call it interest, on the investment for the period of the investment, interest or profit on the holding of the land, the interest or profit on the money expended on improvements up to the date of March 23, 1970, and value to a buyer to [sic] payment of taxes during that period, which, in my analysis, included an item of more than the actual tax paid, as a value to the property on the date of valuation, so that to that extent, there are elements of interest, return, or profit included."

In substance, Cotton considered "the profit is in the interest, and in the increase in land value, and maybe in some of the cost and overhead items." His opinion of the market value of the entire parcel exceeded by $10,000 what it cost defendant. The item he referred to as "overhead" included allowances for the cost "of securing the loan" and "for overhead and supervisory costs, either by owners, developers, or engineers, or others."

Defendant moved to strike all of Cotton's testimony in regard to

his replacement cost study and his opinions based on that cost study upon the ground he did not consider defendant had expended a minimum of six months of highly specialized work, services, expertise and risk in planning and developing the mobile home park.[1] The court denied the motion. Contrary to defendant's contention, no error occurred.

The method employed by Cotton in arriving at his opinion of market value conformed to the provisions of Evidence Code section 820 which provides: "When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion the value of property or property interest being valued as indicated by the value of the land together with the cost of replacing or reproducing the existing improvements thereon, if the improvements enhance the value of the property or property interest for its highest and best use, less whatever depreciation or obsolescence the improvements have suffered." The statute does not prescribe the items which must be considered in determining "the cost of replacing or reproducing the existing improvements." Pertinent is the general rule stated in Evidence Code section 814 that: "The opinion of a witness as to the value of property is limited to such an opinion as is based on matter . . . of a type that reasonably may be relied upon by an expert in forming an opinion as to the value of property and which a willing purchaser and a willing seller . . . would take into consideration in determining the price at which to purchase and sell the property or property interest being valued . . . ." █ Thus, in using a replacement cost of improvements study as an aid to determine the value of property, the items of cost to be considered are limited to those which a willing purchaser and a willing seller would take into consideration in determining the price at which to purchase and sell the property. █ When the admissibility of such an opinion is challenged upon the ground material items of cost are omitted from consideration it may not be excluded unless the evidence dictates the conclusion, as a matter of law, those items would have been taken into account by a willing buyer and a willing seller in determining the price at which to purchase and sell. Where, under the evidence, it is a question of fact whether a willing purchaser and a willing seller would take into consideration the items in question, the opinion is admissible and the effect, if any, of the failure

---

[1]Most of the testimony to which the motion to strike was directed was admissible even assuming Cotton should have considered the alleged items of profit claimed by defendant. Roberts and Steele testified to the results of a cost of improvment study upon which they relied. Their testimony respecting many of the items in that study is contradicted by the testimony of Cotton with respect to similar items in his study. Where a motion to strike embraces admissible and inadmissible testimony, it should be denied. (*Buena Park School Dist.* v. *Metrim Corp.*, 176 Cal.App.2d 255, 262 [1 Cal.Rptr. 250].)

to consider the omitted items is a matter for the trier of fact in judging its weight.

In the case at bench, each of the appraisal witnesses testified, in substance, he considered those items of cost in his replacement cost of improvements study which, in his opinion, a willing purchaser would consider in determining the price at which to purchase. Cotton testified, in effect, a well-informed purchaser, in determining the price for which he would purchase the subject property, would not consider and would not be willing to pay for the items defendant claims are profit items. Roberts testified such a purchaser would consider those items; estimated the amount thereof for the entire project when completed to be $368,000; and considered a prorated portion thereof in determining the value of the parcel taken including its incomplete improvements. On the other hand Cotton testified he did not make a determination of the value of the property based upon an assumed completion of the project because it would have been speculative; and any profit to the developer of such a project comes into being only after it has been completed and brought to production. The evidence would support a conclusion any opinion of the amount of profit recoverable by the owner-developer, premised on claimed work, services, effort, expertise and risk involved in planning and developing the mobile home park to date of valuation, would be the product of speculation and conjecture. The issue was one of fact for determination by the jury rather than one of law for determination by the court. The fact Cotton did not consider the claimed profit items in his replacement cost study was a matter going to the weight of his opinion rather than its admissibility.

In its brief on appeal defendant states: "In addition, the appraisal testimony completely disregarded the defendant's out-of-pocket, indirect, overhead costs"; and supports this assertion by reference to the following question and answer: "Q Mr. Cotton, we have now heard the testimony in this case that the actual indirect cost—one method of allocation shows $91,000 to this particular project. Did you include any of those, or have you seen those sheets? A I don't think I have." The foregoing proves only a compound question produces a worthless answer. In light of other testimony it is obvious the answer of the witness is he did not think he had "seen those sheets." Cotton testified he included in his replacement cost study indirect costs of $70,275 for the entire parcel, and $59,775 for the portion taken. The contention is frivolous.

Defendant offered in evidence two exhibits detailing cost factors considered in the replacement cost of improvements study used by its ap-

praisers; included were items of estimated indirect costs; and the court indicated its unwillingness to admit the exhibits unless defendant produced evidence of the actual indirect costs. Defendant complied but contends the action of the court in the premises was error.

Preliminary to offering the two exhibits, Roberts had testified he estimated the indirect costs on the basis of $250 for each mobile home space in the park. An accountant for defendant also testified the estimated costs of the indirect expenses was $250 per space. There were 291 such spaces in the project. On that basis the total estimated indirect cost was $72,750. After the court made its ruling, defendant recalled the accountant who testified the actual indirect costs were $91,380. Thus the actual indirect costs exceeded the estimated costs and should have increased the total replacement costs used as a basis for value, which would support an opinion of value higher than the opinion of value based on the estimated costs.[2] Defendant has not shown any prejudice.

The effect of the court's ruling was to produce evidence it could have developed by examination of the witnesses. (Gen. see *People* v. *Rigney,* 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].) Evidence of the actual indirect costs was relevant to the issues raised by use of the replacement cost of improvements study. Whether the evidence of estimated indirect expense was relevant, in light of the existence of evidence of actual indirect expenses, we need not determine because the evidence of estimated expenses actually was admitted.

Furthermore, evidence of the actual indirect costs was admissible in proof of the amount of work done on the project as of the valuation date. Roberts testified he attempted to find out how much actually had been expended on the improvements, as of that date, to help him "determine how much of the work had actually been done." He further testified, on that date the project was 33⅓ percent completed. The ratio between the actual costs, direct and indirect, to date of valuation and the actual contemplated costs to date of completion would afford a basis for determining the percentage of completion on the date of valuation.

In addition, evidence of the actual indirect costs was admissible to test

---

[2]The items of indirect costs on the two exhibits in question, excluding financial planning and interest charges, totalled $78,000, and with the financial planning and interest charges in the sum of $64,000 totalled $143,000. In any event, either of the foregoing totals exceeded the estimated costs of $250 per space, totaling $72,750.

the credibility of defendant's appraisers premised upon estimated indirect costs.

The ruling which required defendant to produce evidence of the actual estimated costs was not error.

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1972.