HELEN LUCILLE BRATTAIN *v.* HESTER F. HERRON, ADMINIS-
TRATRIX OF THE ESTATE OF LEWIS A. HERRON, DECEASED,
IRWIN UNION BANK AND TRUST COMPANY, ADMINISTRATOR
OF THE ESTATE OF JOHN B. BISHOP, DECEASED, ALBRETA A.
BUTLER, ADMINISTRATRIX OF THE ESTATE OF RICHARD A.
BUTLER, DECEASED.

[No. 1-573A104. Filed April 9, 1974. Rehearing denied May 13, 1974.
Petition to Transfer dismissed February 11, 1975.]

*J. Lee McNeely, Matchett & McNeely,* of Shelbyville, for appellant

*Cline, King & Beck,* of Columbus, *Hammond & Pugh,* of Indianapolis, *Lawson, Pushor, Mote & Schug,* of Columbus, *Soshnick & Bate,* of counsel, of Shelbyville, for appellees.

LOWDERMILK, J.—This appeal comes to us as the result of an automobile-pick up collision in which three men were killed in the pick up truck, a fourth man was killed in the automobile and the operator of the automobile, Donald R. Farmer, a minor, survived.

The causes were consolidated for trial with the result being that the jury awarded damages against the driver of the

automobile, Donald R. Farmer, and Helen L. Brattain, to Hester F. Herron in the amount of $50,000, to Irwin Union Bank and Trust Company in the amount of $75,000, and to Albreta A. Butler in the amount of $100,000. Judgment was rendered accordingly.

Donald R. Farmer had a maximum of $20,000 insurance coverage on the automobile which he was driving. This amount was paid in to the clerk's office as a result of a criminal action and before the commencement of this trial.

Helen Brattain, Farmer's co-defendant, timely filed her motion to correct errors which was by the court overruled. Farmer did not file a motion to correct errors.

The facts of this case are that on May 3, 1971, Donald R. Farmer, age 20 years, resided with his parents in New Palestine, Indiana. On that day Mr. Farmer, in company of a friend, drove from his home to Shelbyville, Indiana, where he conducted some business and the two boys drove to the home of Mr. Farmer's older sister, appellant Helen Lucille Brattain, arriving there about 11 o'clock in the morning. Up to this time neither Farmer nor his friend had had any intoxicating liquors to drink that day.

These young men stayed in Mrs. Brattain's home for four consecutive hours and left there about 3 o'clock in the afternoon, en route to New Palestine.

While Mr. Farmer and his young friend were in Mrs. Brattain's home they had access to the refrigerator and consumed therefrom several bottles of beer, together with several glasses of whiskey and coke. When they left the home to return to New Palestine they each took a cold beer with them in Farmer's automobile. All the alcoholic beverages that were consumed belonged to Mrs. Brattain and came from her refrigerator and with her knowledge that the boys were consuming the beverages, and she visited with them a part of the time they were there drinking. She was in and out of the home during the entire four hour period that the boys were drinking her

liquor, made no objections to their drinking or to their taking the beer with them when they left. Donald Farmer was her brother and she knew he was under 21 years of age and she further knew, or by the exercise of reasonable care, should have known that Farmer would be driving his automobile on the highway as soon as he left her home. Mr. Farmer had, on prior occasions, consumed alcoholic beverages at the Brattain home without objection.

Mr. Farmer drove on State Road 9 toward New Palestine and at a point about 5½ miles north of Shelbyville, ran off the right side of the pavement, came back on and crossed the same at an angle, laid down skid marks 150 feet long, and collided head on with a southbound pick up truck which had run to the right off of the paved portion of the highway when it was struck.

As a direct result of the collision the occupants of the pick up truck, Lewis A. Herron, John B. Bishop, and Richard A. Butler, were killed. Michael Schreckengast, Farmer's friend, received injuries from which he shortly thereafter died.

Mr. Farmer was admitted to the hospital at Shelbyville and examined by Dr. James H. Tower, Jr., and at the request of a police officer who had accompanied Farmer to the hospital, removed a blood sample from Farmer, placed it in a glass bottle container provided him by the officer, enclosed the container in an envelope, closed it, signed it, dated it, and delivered it to the officer. A test by the State Police of the blood sample revealed that the blood contained .197% of blood alcohol.

The three victims in the pick up truck were employed, with substantial incomes, married and two of them had children.

The appellant's motion to correct errors is quite voluminous. We shall, therefore, write on the specifications thereof presented in the argument section of the brief, consolidating those specifications where it is possible under the Rules, and

omitting those specifications in the motion on which there is no argument (Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7)), as such specifications have been waived by appellant.

Issue A is that the court erred in admitting into evidence plaintiffs' Exhibits No. 20, 29 and 36, the same being photographs of the scene of the accident, which appellant claims depict the bodies of plaintiffs' decedents.

Plaintiffs' Exhibit 20 is a photograph of the automobile operated by Mr. Farmer. By closely scrutinizing the exhibit the top of an apparent victim's head can be seen and apparently men are attempting to remove him from the wreckage. There is nothing gory or gruesome about this photograph. Although other photographs of the automobile were entered into evidence, plaintiffs' Exhibit 20 may be considered merely cumulative evidence to show the speed and violence with which the two vehicles collided.

Plaintiffs' Exhibit 29 is a photograph of the demolished pick up truck which does disclose a man lying under the same. There is no evidence of any blood or deep lacerations to the body. The picture was not gruesome, was taken at the scene of the collision and depicts the extreme violence of the collision by showing the demolishment of the pick up truck and is merely cumulative of other pictures tending to prove the violence of the impact.

Plaintiffs' Exhibit 36 is a photograph of Farmer's automobile setting upright and the totally demolished pick up truck in which three decedents were riding and does not, so far as this court can see, picture any dead human body or bodies. Such exhibit would show the terrific force of the impact and would be merely cumulative of other photographs of the vehicles as they were after the collision.

Appellant relies on the cases of *Evansville School Corp.* v. *Price* (1965), 138 Ind. App. 268, 208 N.E.2d 680, and *Keefer* v. *State* (1958), 239 Ind. 103, 153 N.E.2d 899, as her authority

that the court erred in permitting the introduction of said three photographs.

In *Price, supra,* the trial court permitted the introduction into evidence of a photograph of the corpse of the decedent, age 11, lying in his casket. This court held that such was an abuse of judicial discretion and the court erred in admitting the exhibit for the reason that it was immaterial and irrelevant. We have no fault to find with that reasoning as showing the child in his casket after it was already admitted he had been killed could not tend to shed any light on the manner in which he met his death. In the case at bar the photographs were, in our opinion, relevant and material and tended to show as we have heretofore stated, the speed of Farmer's automobile and the teriffic force and violence of the impact between the two vehicles, the location of the wrecked vehicles with reference to location to one another and to the fact the vehicles came to a stop completely off the paved portion of the highway.

In *Keefer, supra,* it was held that extremely gruesome photographs were irrelevant and inadmissible. We have heretofore held that the photographs in question in the case at bar were not gruesome and therefore the *Keefer* case would not control. There was no error in admitting plaintiff's Exhibits 20, 29 and 36. 13 I.L.E. § 165, Photographs, ch. 9, pp. 44, 45 and 46.

The court now combines issues B and C of claimed errors of appellant Brattain.

Issue B is that the trial court committed reversible error when it permitted plaintiffs to introduce into evidence over objection of defendants, plaintiffs' Exhibit 39, which was a certified copy of the guilty plea of defendant Donald R. Farmer to the charge of causing the death of another while driving under the influence of intoxicating liquor. Donald R. Farmer did, on May 30, 1972, in the same court in which this case was tried, enter his plea of guilty to causing the death

of another while driving under the influence of intoxicating liquor. A certified copy of this guilty plea marked plaintiffs' Exhibit 39 was offered and admitted into evidence over the objection of the defendants and was exhibited to the jury.

Appellant Brattain relies on the case of *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E. 210 as her authority that the court erred. Mrs. Brattain contends that Exhibit 39 could only be offered for one of two reasons: (a) to impeach the credibility of the defendant, Donald R. Farmer, or (b) to establish the facts upon which the plea was rendered. It is our opinion that the holding in *Ashton* v. *Anderson, supra,* does not apply to the case at bar and neither does the case of *Black* v. *Wachs* (1959), 130 Ind. App. 293, 163 N.E.2d 894, apply to the case at bar, as insisted by Mrs. Brattain.

The case of *Dimmick* v. *Follis* (1953), 123 Ind. App. 701, 111 N.E.2d 486, 488, is a case in which the facts show that the defendant was involved in a collision and the same day entered a plea of guilty to reckless driving. However, the record in that case discloses that the defendant-appellant, under circumstances indicating the desire to escape the inconvenience of a trial, did plead guilty to that charge and on which plea of guilty the court entered a judgment and assessed a fine.

In the trial of the *Dimmick* case, the court overruled appellant's objection and permitted appellee to put in evidence the entire record of the proceedings in the City Court of Fort Wayne, including the affidavit, the appellant's plea of guilty, and the court's judgment.

This court discussed the general rule as follows:

> "As a general rule it is well settled that the records in criminal cases are not admissible in civil actions as evidence of the facts upon which a conviction was had, and this is especially true where the civil action is for damages occasioned by the offence of which the party stands convicted. . . . The rule seems sound when we consider the want of mutuality arising from the fact that the parties

to the two records are not the same; that the course of the proceedings and rules of decision in the two courts are different and that a higher degree of proof is required in criminal than in civil cases. . . ."

The court went further to hold as follows:

"However an exception to this rule has been held to arise where the defendant in the criminal case pleaded guilty and the record showing such plea and the judgment entered thereon is offered in evidence in a civil action against him growing out of the same offence. *Such record is admitted not as a judgment establishing the facts upon which it is based but as the deliberate declaration or admission against the defendant's interest in connection with the very matter charged in the civil action.* Like any other admission its probative value may be destroyed by the circumstances under which it was given or by satisfactory explanation. *Rudolph* v. *Landwerlen,* 1883, 92 Ind. 34, 37; *Hamm* v. *Romine, et ux.,* 1884, 98 Ind. 77, 81." (Our emphasis.)

*Shearer* v. *Cantrell* (1969), 145 Ind. App. 693, 253 N.E.2d 514, is a case growing out of a two car collision and in which there is the item of "undisputed evidence" in appellee's plea of guilty before a Justice of the Peace to a charge of failure to yield the right of way. The court held:

". . . The implied, but erroneous, suggestion of appellants' argument is that appellee's failure to yield the right of way is an undisputed fact because appellee pleaded guilty. Either of two (or more) inferences can be drawn from the entry of this plea: 1) Appellee failed to yield the right of way; or 2) appellee was innocent of the charge, *but (as he testified by answer to written discovery interrogatory) he pleaded guilty merely to avoid the expense, time, and trouble of a trial.*"

In the case at bar defendant Farmer's plea of guilty in a criminal action before Judge Tolen was and is an admission against interest and was properly admitted into evidence.

Following this procedure, plaintiffs-appellees filed their motion for an order in limine which was considered by the court and judgment entered as follows:

"NOW, THEREFORE, IT IS ORDERED BY THIS COURT that the counsel for, the agents, servants and employees of, and the witnesses for the defendants be prohibited from mentioning or in any way, directly or indirectly, advising or bringing to the attention of the jury or the prospective jurors in the trial of the above captioned causes the following:

(1) That any money or monies have been tendered or paid into this Court or any other Court by one or more of the defendants, their agents, representatives or insurance companies;

(2) That the defendant, Donald R. Farmer, has been ordered by this Court or any other Court to make contributions for the use and benefit of the plaintiffs.

upon penalty of contempt of this Court.

DATED this 11 day of December, 1972."

Defendant-appellant Brattain urgently insists under Issue C that the trial court erroneously granted the order in limine and as a result of that order the plea of guilty in the criminal action by her co-defendant, Farmer, could not be explained to the jury in the case at bar. In this contention we find no merit. The order and judgment in limine did not preclude Mr. Farmer from taking the witness stand and testifying as to the reason or reasons why he did enter a plea of guilty to the offense of causing the death of another while driving an automobile under the influence of intoxicating liquors. He had the opportunity to do so under the authority of the cases heretofore cited and did not and by so failing he waived his right to explain his plea of guilty and cannot now be heard to complain that he was not permitted to explain his guilty plea.

We find no error was committed as charged by Issues B and C.

Issue D is that the court had erred in submitting to the jury the question of the negligence of appellant Brattain.

This specification is based on Brattain's contention that the violation of IC 1971, 7-1-1-32 (10), Ind. Ann. Stat. § 12-610 (Burns 1956), which reads, in part, as follows, to-wit:

"12-610. Minors—Habitual drunkards—Houses of ill fame—Sales prohibited.—No alcoholic beverages shall be sold, bartered, exchanged, given, provided or furnished, to any person under the age of twenty-one [21] years, . . . Any person guilty of violating this paragraph shall be punished. . . ."

is not a basis for civil liability.

Brattain contends that the issue of negligence should not have been submitted to the jury for basically four reasons which are as follows:

"1. The violation of Indiana Acts of 1935 (As Amended), Chapter 226, Section 31, is not the basis for civil liability against a social host by an injured third party.

2. Indiana Acts of 1935 (As Amended), Chapter 226, Section 31, do not apply to individuals not engaged in the commercial, whosesale or retail distribution of alcoholic beverages.

3. There is no common law action of negligence against one furnishing alcoholic beverages in favor of those injured by the intoxication of the person so furnished.

4. An examination of all the evidence viewed in the light most favorable to the plaintiff discloses that the defendant, Helen Lucille Brattain, did not violate the Indiana Acts of 1935 (As Amended) Chapter 226, Section 31."

Counsel for Brattain has presented this court with an excellent brief on all phases of this case, with the section on the issue of negligence being particularly well documented. Counsel has presented persuasive arguments, supported by case law from many jurisdictions. We note with approval the equally fine brief presented this court by counsel for appellees. However, we do not deem it necessary to specifically deal individually with all of the contentions and authorities raised by appellant, as our decision shall answer any and all contentions.

Our Supreme Court dealt with a similar question to the one raised here in the case of *Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847. In that case a minor had been sold alcoholic beverages. The minor drank the liquor, became intoxicated, and as a result of such intoxication he drove his

automobile into a collision with the plaintiff's ward. The issue in that case was whether the seller of the liquor could be held liable to the injured party. The theory advanced by the plaintiff in *Elder, supra,* was that a violation of IC 1971, 7-1-1-32 (10), *supra,* constituted negligence *per se.*

The court in Elder cited the general rule with regard to civil liability resulting from the violation of a statute as follows:

> "The general rule is that a violation of a statute enacted for reasons of safety is negligence *per se,* or negligence as a matter of law. . . ."

Our Supreme Court found that IC 1971, 7-1-1-32 (10), *supra,* was enacted with the primary purpose being to protect the citizenry of Indiana and that the plaintiff's ward (injured party) was a member of that class. The court then concluded as follows:

> "Hence, the statute was sufficiently broad in scope to cover the type of person represented by the plaintiff's ward in this action, and to cover the particular type of injury involved in this action. We are therefore of the opinion that an allegation of the violation of this statute is an allegation of negligence."

The court, speaking further on proximate cause, said:

> "However, it is well settled that for a negligent act or omission to be a proximate cause of injury, the injury need be only a natural and probable result thereof; and the consequence be one which in the light of the circumstances should reasonably have been foreseen or anticipated. . . .
>
> In order to be actionable, an act of negligence need not be the only proximate cause. It is sufficient if the act, concurring with one or more efficient causes, other than the plaintiff's fault, is the proximate cause of the injury."

The court went further to say that it was the jury's duty to determine whether or not the injurious consequences that resulted from negligence are such as ought reasonably to have been foreseen, or whether an intervening cause was such as to break the causal connection.

Thus, our Supreme Court, in *Elder, supra,* specifically held that a violation of IC 1971, 7-1-1-32 (10), *supra,* is negligence.

We note that the statute is not confined to vendors of liquors as contended by Brattain. The statute indicates that *any person* who gives, provides, or furnishes alcoholic beverages to a minor is in violation of the statute. The rationale behind the *Elder* case is that our Legislature has sought to protect the citizens of Indiana from the dangers of minors who would consume alcoholic beverages. Our Supreme Court found that one who sells alcoholic beverages to a minor is liable in a civil action for negligence for injuries resulting from the violation of the statute (IC 1971, 7-1-1-32 (10), *supra.*) We see no distinction between one who sells alcoholic beverages to a minor and one who gives alcoholic beverages to a minor. The Legislature has provided that either of these actions is a violation of the statute.

Thus, it is our opinion that any person who violates the statute as it pertains to a minor can be liable in a civil action for negligence, since the violation of the statute as it pertains to a minor is negligence *per se.* The Legislature has not seen fit to distinguish between a seller and a social provider of alcoholic beverages to a minor and it is our opinion that no such distinction would be either logical or equitable.

We note that these same questions have arisen and been litigated in the courts of California. In the case of *Vesely* v. *Sager* (1971), 5 Cal. 3rd 153, 95 Cal. Rep. 623, 486 P. 2d 151, the Supreme Court of California was faced with a situation strikingly similar to *Elder, supra.* California has a statute which is very similar to IC 1971, 7-1-1-32 (10), *supra.* In *Vesely, supra,* a tavern owner sold intoxicating beverages to a patron who drank the intoxicants, and as a result of his intoxication was involved in an automobile collision. The Supreme Court of California held that the tavern keeper was liable to the injured party as a result of the violation of the statute by the tavern owner. The court reasoned that the matter was not one merely of proximate cause but rather one of whether a duty existed between the tavern owner and

persons injured as a result of his violation of the statute. The court further held that a violation of the statute was negligence *per se* on basically the same reasoning as *Elder, supra.* In fact, the court in *Vesely* cited and relied on many cases, including *Elder.*

Following the *Vesely* decision, a case was appealed to the California Appellate Court, Division 3, which involved a minor who was provided with intoxicating beverages at a Christmas party given by the minor's employer, defendant therein, as a social host. The minor then left in his car in an intoxicated condition, which condition was known to the defendant, and was involved in an automobile collision wherein the plaintiff sustained injuries. The plaintiff, in the case of *Brockett* v. *Kitchen Boyd Motor Company* (1972), 24 Cal. App. 3d 171, 100 Cal. Rep. 752, brought an action against the defendant based on a statute similar to the one in the case at bar which made it a misdemeanor to provide or sell intoxicating beverages to a minor. The California court in *Brockett*, relied heavily on the earlier Supreme Court decision discussed herein, *Vesely, supra.* The court, in *Brockett*, noted the distinction in the two cases, that being the distinction between a vendor and a social host, but found that the rationale of the *Vesely* decision was applicable to both cases. The court in *Brockett* found that the legislative intent was to protect the general public from injuries resulting from the excessive use of intoxicating liquors by minors. The court found that one who willfully disobeyed the law and furnished intoxicants to a minor in violation of the statute with knowledge that the minor would drive a vehicle on the highway would be liable in a civil action as a result of injuries sustained by third parties. The court found that vendors and social hosts could be in violation of the statute and it made no difference to the end result intended to be reached by the Legislature whether the violator of the statute was a vendor or a social host.

The respondents in *Brockett* advanced the same problems as has Mrs. Brattain in the case at bar. The problems ad-

vanced are whether the decision will lift the common law immunity which has been available to non-commercial suppliers of intoxicating beverages. The fears expressed by Mrs. Brattain are that this decision will open up a wide range of law suits involving every person who furnishes alcoholic beverages to anyone who becomes involved in an automobile collision. The court in *Brockett* did not reach the broad question raised by the respondents in that case and neither do we.

Our decision is limited to the facts in the case before us wherein a person knowingly gave alcoholic beverages to a person who was known to be a minor, with knowledge that the minor would be driving on the public highways. The actions by Mrs. Brattain were in violation of IC 1971, 7-1-1-32(10), *supra,* and such violation constituted negligence.

Appellant Brattain has contended that the evidence most favorable to the appellees discloses that Mrs. Brattain did not violate the statute in question. With this contention we cannot agree. The evidence discloses that while Mrs. Brattain did not serve the liquor to Mr. Farmer she was aware that Mr. Farmer and his friend were obtaining the beer and whiskey from her refrigerator. The evidence discloses that Mrs. Brattain made no objection at any time to Mr. Farmer's consumption of the alcoholic beverages, even though she was present on the premises during the entire four hour period when Farmer and his friend were in her residence. It is our opinion that the evidence shows conclusively that Mrs. Brattain violated the statute in question.

Under the authority and reasoning of *Elder, supra,* and other cases cited hereinabove, it is our opinion that the trial court committed no error when it submitted to the jury the question of negligence of the appellant, Mrs. Brattain.

Appellant Brattain, in Issue E, claims error in the admission into evidence of plaintiffs' Exhibit 38, the same being the envelope containing the blood sample of Donald R. Farmer.

The blood sample was taken at the Shelbyville Hospital by Dr. Tower on the request of a state trooper who furnished the vial for the blood and the envelope in which the vial was placed and on which was placed the identification.

Mrs. Brattain contends she was not informed in the pre-trial order that Exhibit 38 would be used as evidence. However, before trial she had subpoened Dr. Tower and Lt. Asa of the Indiana State Police, the technician who had tested the blood for alcohol. She did not at the time of trial ask for a continuance because of the surprise, if any surprise did exist. Mrs. Brattain, to have saved this question, should have asked the court for a continuance. This she did not do, and having so failed, waived any right to object to the admission of evidence because the same had not been mentioned in the pretrial order. *Hunt* v. *State* (1973), 260 Ind. 375, 296 N.E.2d 116.

Appellant Brattain next contends that plaintiffs' Exhibit 38 was inadmissible for the reason that the evidence had been obtained illegally and in violation of the constitutional rights of the defendant Farmer.

Dr. Tower testified that he took the blood sample from Mr. Farmer, that he used words to the effect to tell Farmer that he had been asked to take a blood sample by the police, that Farmer made no negative response of any kind, that Farmer was conscious, that Farmer was in control of his faculties, and that Farmer was in a lucid state of mind.

Appellant Brattain relies on the case of *Alldredge* v. *State* (1958), 239 Ind. 256, 156 N.E.2d 888. We are unable to determine where Mrs. Brattain can get any comfort in relying on this case, for the reason that the same has been distinguished, if not overruled, by *Adams* v. *State* (1973), 260 Ind. 663, 299 N.E.2d 834. Further, Mrs. Brattain cannot base her defense on her claim that blood was taken from her co-defendant, Farmer, illegally. Our law is well settled in Indiana that one co-defendant cannot

avail himself of an objection to the legality of the search and seizure of the person or property of a third person. *May* v. *State* (1953), 232 Ind. 523, 112 N.E.2d 439.

In the case of *Schmerber* v. *State of California* (1966), 384 U.S. 757, 86 S. Ct. 1826, the defendant was charged with driving an automobile under the influence of intoxicating liquor. A sample of his blood was taken over his objection while he was in the hospital after his arrest.

Appellant contended that the admission of the analysis of the blood sample was inadmissible for the reason it violated the 5th Amendment privilege against self discrimination.

Our Supreme Court discusses and distinguishes between privilege as a bar against compelling communications or testimony and compulsion which makes a suspect or accused the source of "real or physical evidence." The same is defined in *Schmerber, supra,* as follows:

". . . On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but the compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

We hold in the case at bar that Mr. Farmer did not suffer compulsion but assuming arguendo that he did and was forced to give a sample of his blood, this would have made the body of Farmer the source of "real or physical evidence" and did not violate the United States Constitution.

Our Indiana Supreme Court, in *Adams* v. *State, supra,* cited *Schmerber, supra,* as follows:

". . . In *Schmerber* v. *California, supra,* the Court, in a 5-4 decision held that under the facts obtaining, the defendant's constitutional rights had not been violated by the compulsory blood test and the admission of the results thereof. . . .

We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. . . ."

In *Green* v. *State* (1971), 257 Ind. 244, 274 N.E.2d 267, our Supreme Court decided a case with a very similar factual situation to the case at bar adversely to the appellant.

Thus, it is our opinion that no error was committed in the doctor's taking the blood sample from Mr. Farmer.

The remaining issue we find in our merger of Issues E and F which we have not answered is the charge that the court erred in permitting Lt. Asa to testify concerning the chemical analysis of the blood sample taken from Mr. Farmer.

Mrs. Brattain urgently contends that Lt. Asa's testimony was necessarily based on plaintiffs' Exhibit 38, which was erroneously admitted into evidence and, additionally, there was a fatal gap in the chain of custody of the blood sample which of itself rendered the testimony concerning the analysis of the sample inadmissible.

The blood sample was handed by the doctor to Indiana State Police Trooper Fewell very shortly after it was taken. Trooper Fewell testified that plaintiffs' Exhibit 38 was the envelope that the blood sample taken from Mr. Farmer was in and the container was inside an envelope that Trooper Fewell said "We sealed in." Trooper Fewell testified he received the envelope at the hospital on May 3, 1971, the envelope was sealed and that he kept it with him overnight until 9:00 o'clock the following morning when he turned the sealed envelope over to Officer Spurgeon to take to the Headquarters Laboratory.

Lt. Asa testified that on May 4, 1971, Trooper Spurgeon delivered the envelope containing the blood sample to him at the State Police Laboratory in Indianapolis, that the envelope had not been opened and that the seal was unbroken.

Lt. Asa also testaified that he had never known of any misplacement of any blood samples by the State Police Force and that he had never known of any instance where a State Trooper had tampered with a sample, and he had tested approximately 7,000 samples during his career.

The chain of custody of the exhibit is continuous from the time that the blood was drawn by the doctor and placed in the vial and handed by the doctor to Trooper Fewell and sealed in the envelope (plaintiffs' Exhibit 38) and was retained in his possession until handed to Trooper Spurgeon at 5½ miles north of Shelbyville, Indiana, and who delivered the same to the State Police Laboratory in Indianapolis within an hour and fifty minutes. It is this particular time that appellant Brattain contends there is such a break that the evidence is not admissible. The law is well settled in Indiana that the chain of custody is adequate if it is such that the trial judge can be satisfied that the specimen has not been tampered with.

It is our opinion that there was adequate evidence upon which Judge Tolen could weigh the evidence and determine that the specimen had not been tampered with and was in continuous custody of the State Police from the time it was handed to them until it was delivered to the State Police Laboratory in an undisturbed condition. See, *Orr* v. *Econo-Car of Indianapolis, Inc.* (1971), 150 Ind. App. 411, 276 N.E.2d 524.

We therefore hold that Lt. Asa's testimony was properly admitted into evidence.

Mrs. Brattain next complains, in Issue G, that the court committed reversible error in refusing her tendered Instructions Nos. 1, 2, 3, 4, and 5. We have carefully examined defendant's tendered instructions and have duly considered her contentions and arguments in relation thereto. However, it is our opinion that no error was committed by the trial court's refusal to give said tendered instructions, as the contents

of said instructions were fully covered by other instructions which were given to the jury, and the exclusion of certain contents did not result in prejudice to the defendant and was, therefore, harmless.

In specifications H and I, Mrs. Brattain complains that plaintiffs' tendered Instructions Nos. 1 and 8 were erroneous and prejudicial to her and should not have been given to the jury. A careful examination of these instructions and defendant Brattain's written objections thereto discloses that the instructions are correct statements of the law and are supported by case law in Indiana, and there was no error in the giving of said instructions.

In Issue J Mrs. Brattain next urges that the court erred in giving the jury plaintiffs' tendered Instruction No. 10, which instruction set out the specifications the jury might consider in measuring damages.

The first specification read as follows: "1. The reasonable value of the necessary medical, hospital, funeral and burial expenses of each decedent."

Mrs. Brattain timely filed her written objection to said written instruction, objecting to the inclusion of necessary medical and hospital expenses, and as a result of such instruction not being a fair statement of the law as it applied to the facts in the case at bar, was misleading, confusing and prejudicial to Helen Brattain.

The first paragraph of the instruction informed the jury that if it found for plaintiffs on the question of liability that they must then determine the amount of money which will fairly compensate the distributees of the plaintiffs' decedents for *those elements of damage which were proved by the evidence to have resulted from the decedents' death.* This portion of the instruction limits the jury to a consideration of the *damages which were proved by the evidence* to have resulted from the deaths of the three men. The evidence was that the three men in the pick up truck were killed outright

and dead when they were removed from the scene of the collision and there would necessarily be no medical or hospital expenses incurred by any one of the three decedents.

Our Supreme Court, in the case of *New York, Chicago & St. Louis Railroad Company* v. *Henderson* (1957), 237 Ind. 456, 147 N.E.2d 239, cited the general rule on the effect of an erroneous instruction as follows:

> ". . . it is true that prejudice from an erroneous instruction is presumed unless the contrary affirmatively appears and in considering the effect of an erroneous instruction this Court assumes that the error influenced the rest unless it appears from the interrogatories, the evidence, or some other part of the record, that the verdict under proper circumstances could not have been different. . . ."

Under the rule laid down by Chief Justice Emmert's concurring opinion in *New York, Chicago & St. Louis Railroad Company* v. *Henderson, supra,* we cannot presume that there was prejudice from the inclusion of medical and hospital expenses in the instructions, as the contrary affirmatively appears from the evidence that as the three decedents, as heretofore stated, were instantly killed that the verdict under proper instructions could not have been different.

And, further, in the case of *Indianapolis Transit System, Inc.* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543, the appellant did not charge that the damages awarded by the jury in that case were excessive and Judge White of this court held that such failure was a tacit admission that there was sufficient evidence on other elements of damage to support the award of the jury. In the case at bar Mrs. Brattain has made no contention on appeal that the damages awarded by the jury were excessive, and has failed to show that any prejudice resulted to her from the inclusion in Instruction No. 10 of the words "necessary medical, [and] hospital expenses."

 In our opinion no harm resulted to appellant Brattain and in this case the instructing on medical and hospital expenses was harmless.

The last issue of error confronting us is that the court erred in allegedly permitting plaintiffs' Exhibit 24, a photograph of the scene of the collision, to be admitted into evidence, made a part of the record, and exhibited to the jury.

There is a dispute between the parties as to whether or not plaintiffs' Exhibit 24 was ever admitted into evidence or exhibited to the jury. Appellant says in her brief, "In candor, defendant Brattain does not know whether Exhibit 24 was exhibited to the jury or not."

We have examined the transcript of the record and find that there was a question as to whether or not the exhibit had been admitted and exhibited. The record discloses that Judge Tolen, after argument on the motion to correct errors, entered his findings and order as follows: "The court, in order for the record to truly disclose what occurred in the trial, and to make the record conform to the truth, does hereby correct the record to show that plaintiffs' Exhibit 24 was not admitted into evidence and was not exhibited to the jury."

We appreciate appellant's honesty in what she has said concerning Exhibit 24 but, nevertheless, are constrained to hold that no error was committed by the trial court as to Exhibit 24.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 309 N.E.2d 150.