MINNIE PILKINS ET AL., APPELLEES, V. ERNEST F. HANS
ET AL., APPELLANTS.

FILED MAY 20, 1910.  No. 16,054.

1. **Intoxicating Liquors:** ACTION FOR DAMAGES: PLEADING.  In an
action against licensed saloon-keepers for damages arising from
the sale of liquors to plaintiff's husband causing his death, it is
proper to allege and prove that for some time immediately prior
to the day of the death of deceased the defendants had sold
liquors to the deceased and had thereby caused him to become
an habitual drunkard.

2. ————: ————: EVIDENCE.  In such action it is not erroneous to
allow a witness to testify that he saw the deceased drinking
liquors from a bottle on the day of his death as tending to prove
the allegation that deceased became intoxicated on that day.
Such evidence becomes material if it is shown by the same or
other witnesses that the defendants contributed to his intoxica-
tion.

3. **Evidence:** RECORDS.  The village records of the bond given by a
licensed saloon-keeper, kept by the clerk of the village and
identified by him as such, are competent *prima facie* evidence of
the execution and delivery of the bond.

4. ————: REVIEW.  When a witness has stated all of the facts within
his knowleuge as to the employment and habits of deceased, it
is not prejudicial error to refuse to allow the witness to answer
the question whether he was or was not an industrious man.

5. **Intoxicating Liquors:** ACTION FOR DAMAGES: LIABILITY.  If a
saloon-keeper sells liquor knowing or having good reason to
believe that it is intended for deceased, or intended that the
deceased shall participate in drinking it and deceased does so
participate, he is liable as though he sold to the deceased direct.

6. **Trial:** INSTRUCTIONS.  It is erroneous to recite in an instruction
certain of the disputed facts in the case, omitting other facts
bearing upon the same point, but if the facts so recited are
admitted in the pleadings or established without contradiction
such recital of facts is without prejudice.

7. **Intoxicating Liquors:** ACTION FOR DAMAGES: MEASURE OF DAM-
AGES.  In an action against licensed saloon-keepers for damages
resulting from the sale of liquors, the plaintiff may recover all
damages occasioned by the sale.  The provisions of section 18 of
the act were not intended to limit the measure of damages, but
to simplify the proof in such cases.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*H. F. Barnhart* and *Mapes & Hazen,* for appellants.

*William V. Allen* and *William L. Dowling, contra.*

SEDGWICK, J.

On the evening of the 28th day of June, 1907, Jones Pilkins, in attempting to cross the tracks of the Chicago & Northwestern Railway Company at Battle Creek, was run over by the engine and cars and instantly killed. This plaintiff, who is his widow, began this action in her own behalf and in behalf of her four minor children in the district court for Madison county to recover damages alleged to have been suffered because of his death. The keepers of three saloons in the village of Battle Creek and the sureties upon their bonds were made defendants. Upon the trial the jury, under the instruction of the court, found no cause of action against one of the defendants, and found a verdict in favor of plaintiff against the remaining defendants who have appealed to this court. The petition upon which the action was tried alleged in the usual manner the licenses of the saloons and the giving of the bonds required by the statute, and then alleged that for many months prior to the 28th day of June, 1907, "the said Jones Pilkins had acquired the habit of drinking malt, spirituous and vinous liquors at the said saloons of the said defendants to excess, and of becoming intoxicated thereby"; that she had warned the defendants not to sell liquors to her husband, but they disregarded her warning and the rights of the plaintiff and her said minor children, and did "on the 28th day of June, 1907, sell and give to the said Jones Pilkins malt, spirituous and vinous liquors at their saloons, which he, the said Jones Pilkins, then and there drank, whereby he then and by reason thereof became extremely intoxicated" and incapable of caring for himself, and while in that condition "he, the

said Jones Pilkins, stepped onto the track of the Chicago & Northwestern Railway Company in front of a rapidly running train of cars, and was then and there and thereby run over and instantly killed"; that at the date of the death of the deceased he was a young man about 28 years old and a laborer by occupation, and earned and was capable of earning about $700 a year, which he contributed to the support of his family, and was in good health and industrious when not intoxicated; that the plaintiff and her minor children were dependent upon him for her support, and "that by reason of said intoxication of the said Jones Pilkins, produced by the said defendants in the manner aforesaid, and his said death, the plaintiff and her said minor children are entirely destitute and without means of support, and have sustained damages in the sum of $10,000." The answer appears to be a general denial as to the allegations of the cause of the death of the deceased and as to the damages sustained by the plaintiff, and it was so treated by the trial court.

1. The first objection raised by the defendants is that the court erred in allowing proof of sale of liquor by the defendants to the deceased on occasions prior to the date of his death, but we think there was no error in receiving this evidence.

2. It was objected that the court erred in allowing two witnesses to testify to having seen the deceased drinking out of a bottle on one of the back streets of Battle Creek on the evening before his death. The ground of the objection is that there was no evidence showing that the contents of the bottle were obtained at the saloon of either of the defendants, but of course it was competent to show that the deceased was drinking and became intoxicated on that day, and then to show, if possible, that his intoxication was the cause of his death, and that the defendants were responsible for his intoxication. It was not to be supposed that all of this could be proved by one and the same witness, and this evidence was properly received.

3. The plaintiff offered in evidence the bonds filed with the village clerk, as they had been identified by the clerk and shown to be the original bonds filed and to be a part of the records in his case. This evidence was objected to on the ground that there was no evidence of the execution and delivery of the bonds. Thereupon a witness was called to testify that he was acquainted with the handwriting of the president of the surety company and knew that the signature on the bonds was executed by the president of the company. The bonds were then received in evidence, and this ruling of the court is complained of. In *Gran v. Houston*, 45 Neb. 813, it appears in the opinion, at page 833, that an objection was made to the admission of a certified copy of the bond, but the same was admitted over the objection, and it was held that this was not erroneous. The sections of the statute relating thereto were quoted, and it was said that, as "the objection was confined to the admissibility of the bond * * * there was no error, if any committed, which is of any avail." It was not intended to hold that the surety company could not defend under such circumstances upon the ground that it had not executed the bond, but that the record of the bond was sufficient *prima facie* proof to allow its admission in evidence, and if no other evidence was offered it would be sufficient proof of its execution by the defendants. This objection therefore was properly overruled.

4. The defendants complained that their witness was not allowed to answer the question, "Now, from your acquaintance with Mr. Pilkins, you may state whether he was or was not an industrious man," and other similar questions. The witness interrogated testified that he had known the deceased for several years and saw him quite often, and, when asked whether the deceased was in the habit of working, answered, "I seen him work," and, being asked, "Was he in the habit of being generally employed or just occasionally?" answered, "I have seen him work, and I have seen him standing around the stores."

He was asked, "And you may state whether or not he was habitually employed, or was he habitually standing around the stores?" An objection to this question was sustained, and it would seem from the many questions of this class that had been asked and answered that this question might be considered to be suggestive, and its exclusion not such an error as would require a reversal of the judgment. And so the question whether the deceased was or was not an industrious man was also properly excluded. The witness had testified to the facts within his knowledge as to the employment of the deceased, and the jury were as competent as the witness to say whether the deceased should be considered an industrious man. We do not find any other rulings of the court of this nature upon the page of the record referred to, and in reading the evidence of the various witnesses we have not observed any prejudicial error in ruling upon such offers of testimony.

5. The court instructed the jury: "If you find that other persons purchased intoxicating liquors on June 28, 1907, from the persons then in charge of the saloons of any defendant, which was taken out of doors by such purchasers, with the knowledge or consent of the person in charge of such saloon, or under such circumstances that he had good reason to believe at the time of such sale that Jones Pilkins was among the persons who was to drink the same, or a part thereof, and that said Jones Pilkins drank the same, or a part thereof, and by means thereof became intoxicated, or his intoxication was thereby contributed to in any degree, then such sale or giving would be within the meaning of the statute, and if Jones Pilkins thereby became intoxicated, or his intoxication was in any manner contributed to thereby, and while he was in such condition, and by reason thereof, he was run over and killed by a train of cars, substantially as stated in the amended petition, if you find the other elements of the plaintiff's cause of action exist, such principal defend-

ant or defendants as thus sold or gave him such intoxicating liquors, and the surety on his bond, would be liable in this action." It is shown in the evidence that the deceased, with several others, was engaged during the day in breaking a horse or horses by driving through the streets of the village, and there was evidence tending to show that they were all drinking at various times during the day, and tending also to show that they were procuring liquor at the saloons to drink elsewhere, and it was in view of this condition of the evidence that the instruction was given. If the defendants sold liquor to one of these parties knowing or having good reason to know at the time that they were drinking it together, and that the deceased was one of the parties and drinking with them, such sale would undoubtedly be equivalent to the sale to the deceased himself, and we think that the instruction fairly submitted the question to the jury.

6. Instruction No. 5 of the requests of the plaintiffs given by the court recites quite at length circumstances in the case as disclosed by the evidence. The jury by this instruction were told that there was evidence tending to prove those circumstances, and that if they found that the circumstances were proved by the evidence then they might be considered by the jury with all the other testimony in the case in determining whether the deceased purchased and drank intoxicating liquor in the saloon of any of the principal defendants on that day and before his death. We think that this instruction ought not to have been given. The jury should of course consider all of the circumstances in the case that are proved by competent evidence, and to specify some and omit others gives those circumstances that are specified such prominence that might lead the jury to disregard other equally important circumstances. Under ordinary circumstances such an instruction would require a reversal of the judgment. We find, however, that each of the facts recited in this instruction is proved by the evidence and without any conflicting evidence. That being the case, it is of

course true that those facts being undisputed should be considered by the jury in connection with all the other facts in the case that might be more or less controverted. In the trial of a civil case before a jury the court may properly state to the jury the material facts that are admitted by the pleadings or are fully established by uncontradicted evidence; only those material facts that are in dispute should be submitted to the jury. So far as we have observed, the facts recited in this instruction are so clearly proved that it cannot be said that there was any substantial dispute in regard to any of them. If the judge might have told the jury that these facts were established by the pleadings and evidence, it cannot of course be prejudicial to the rights of defendants to recite the facts in the guarded manner of the instruction complained of. We cannot see that the giving of the instruction was prejudicial to the rights of the defendants so as to require a reversal.

7. The jury found the damages of the plaintiff to be $4,500. It is objected that these damages are excessive, so much so as to show that the jury were influenced by passion and prejudice. Section 15 of the act in question (Comp. St. 1909, ch. 50) provides: "The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic." In *Young v. Beveridge*, 81 Neb. 180, it is said in the syllabus: "The measure of damages is the present value of the sum the deceased would probably have contributed to the support of his wife during the period of their joint expectancy of life and the amount he probably would have contributed to the support of the minor child during her dependency, the same being less than the deceased's expectancy." In the opinion an instruction of the trial court is considered, in which instruction the court attempted to tell the jury the rule for determining the damages that are occasioned by loss of support, and while criticising that instruction the opinion says: "In such cases, the measure of recovery to which the widow is entitled is the present

value of the husband's support during their joint expect-
ancy of life; and minor children can recover only for loss
of support during their minority, except in cases of de-
pendent adult children." It appears from this that the
court had in mind all those damages that result from loss
of support, but it was not intended in that case to hold
that no other damages can be recovered except those
which result from that cause. In the same volume of
reports in *Murphy v. Willow Springs Brewing Co.,* 81
Neb. 219, the rule is stated in the third paragraph of the
syllabus as follows: "There is no ground for restricting
the right of recovery in actions brought under the law
governing the sale of intoxicating liquors where death
results within narrower limits than actions brought
under Lord Campbell's act; and, while loss of means of
support is a pecuniary injury, it is not the only damage
for which a recovery may be had in such actions." This
is undoubtedly the true rule of the measure of damages in
such cases. The person licensed must pay *all damages*
that a person sustains in consequence of such traffic, and
the special provisions found in the statute subsequent to
this general provision are intended to extend and enlarge
the measure of damages rather than restrict it. Section
18 provides for damages caused by "the acts done or in-
juries inflicted by a person under the influence of liquor,"
and the last part of that section also provides that "in an
action for damages brought by a married woman, or other
person whose support legally devolves upon a person dis-
qualified by intemperance from earning the same, it shall
only be necessary to prove that the defendant has given
or sold intoxicating drinks to such person 'during the
period of such disqualification." In construing this latter
part of the section in several cases language has been used
that apparently has led some to think that an action by
a woman for damages caused by the intoxication of her
husband was for the sole purpose of recovering for a loss
of means of support and that other damages could not be
included, but this clearly was not the intention of this

provision of the statute.   The meaning of it is that, so far as the damages caused by her loss of means of support are concerned, all those shall be liable who have furnished any intoxicating drinks to the person disqualified by intoxication, at the time while he was so disqualified, thereby causing a liability that would not have existed by the course of the common law.   In *Greenlee v. Schoenheit*, 23 Neb. 669, it was held that "an action may be maintained against a vendor of intoxicating liquors by a married woman for damages sustained by her by reason of her money being spent by her husband for intoxicating liquors, or squandered by him while intoxicated, or in the saloon of the liquor seller," and in *Keeling v. Pommer*, 83 Neb. 510, it is said in the second paragraph of the syllabus that "loss of means of support is not the only damage for which a recovery may be had," and it is held that a recovery might be had for "medical attendance paid by her and funeral expenses necessarily incurred by her in procuring the burial of her husband, when such items of damage are alleged and proved."

In this case the defendant was a young man with a wife and four children dependent upon him for support. If his death had been caused by the negligence of the railroad company instead of his own drunkenness, and the action had been against the company for damages, it would not be considered that the amount of the recovery in this case was excessive, and we see no reason for adopting a different rule for the measure of damages in this case.   This court has in some damage suits reduced the amount of recovery as fixed by the verdict of the jury; but such questions are generally for the jury, and the court should not interfere with their judgment unless the circumstances are such that all reasonable men, when not influenced by passion or prejudice, must agree that the damages are excessive.   There is evidence in the record tending to show that the deceased did not fully realize the responsibilities that rested upon him, and also that he did not economize all of his time and was more or less

wasteful of his energies and his money.     There is also evidence that this resulted largely from drinking habits which these defendants helped to develop, as alleged in the petition.    There is also evidence that he was a strong, able-bodied man, capable of earning a good living for his family, and that he continued to earn wages by which his family was supported up to the time of his death.   We do not feel warranted under all of the circumstances in the case to interfere with the verdict of the jury.

We find no prejudicial error in the record, and the judgment of the district court is

AFFIRMED.