Brian WHISMAN, Appellant
(Plaintiff below),

v.

Lawrence FAWCETT, Fraternal Order of Eagles, Lodge 741, and Veterans of Foreign Wars, Post 1987, Appellees (Defendants below).

No. 1184S437.

Supreme Court of Indiana.

Nov. 9, 1984.

Thomas J. Lantz, David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, for appellant.

Gerald G. Angermeier, Jewell, Crump & Angermeier, Columbus, for appellees.

## ON PETITION TO TRANSFER

HUNTER, Justice.

This case is before this Court upon the petition to transfer of defendants-appellees, Lawrence Fawcett, Fraternal Order of Eagles, Lodge 741, and Veterans of Foreign Wars, Post 1987. Plaintiff-appellant, Brian Whisman, brought a negligence action against defendants for injuries he sus-

tained when Fawcett's car struck him. The trial court entered judgment upon a jury verdict in favor of all three defendants. Plaintiff appealed. The Fourth District Court of Appeals reversed the trial court's decision in *Whisman v. Fawcett,* (1983) Ind.App., 456 N.E.2d 1068. The Court of Appeals found the trial court erred in allowing the defendants to raise the defense of contributory negligence and incurred risk. The Court ruled that defendants should not have been allowed to raise those issues because they were not explicitly set forth in the trial court's pretrial order. Because we believe the trial court had the discretion to construe its pretrial order to include the issues of contributory negligence and incurred risk, we now grant defendants' petition to transfer. The decision and opinion of the Court of Appeals are hereby vacated, and the trial court's judgment is affirmed. The essential facts were succinctly summarized by the Court of Appeals:

"On the evening of November 21, 1979, Lawrence Fawcett attended a Thanksgiving dance at the V.F.W. post in Columbus, Indiana. Over several hours, Fawcett drank four beers. Fawcett stayed at the V.F.W. until 10:00 or 11:00 p.m., then went to the Eagles Lodge. Bartenders there testified that Fawcett appeared drunk when he entered the bar, and one bartender refused to serve Fawcett any beer. This bartender testified he did not remember seeing Fawcett when he was not drunk. Fawcett went to another room at the Eagles where a dance was in progress. While he was there, two of his friends each brought Fawcett a beer. He drank one and half bottles of beer and left at 1:00 a.m.

"On this same evening, Brian Whisman and three friends split a six-pack of beer—Whisman had two—and went 'mudding' in a jeep. They returned to Columbus after midnight. As they drove into town, a Monte Carlo pulled up beside them. Whisman's friend, who was driving the jeep, argued with the other car's driver as they drove along. Finally the cars stopped side by side in the road,

blocking both east-bound lanes, and Whisman's friend got out to confront the other driver. Whisman climbed out of the back of the jeep and stood to the rear of the two cars.

"At this point Fawcett, who had just left the Eagles, was also east-bound, driving at some distance behind the two cars. Traveling in the left lane, Fawcett saw the Monte Carlo's tail lights in front of him and moved into the right lane. Fawcett testified he did not see the jeep blocking this lane. Fawcett also testified that, as he neared the jeep, Whisman jumped in front of him waving his arms. Whisman denied this. Fawcett applied his brakes but slid into Whisman, pinning him against the jeep. Whisman was seriously injured. As a result of this incident, Fawcett was convicted of driving while under the influence of alcohol."

*Whisman*, 456 N.E.2d at 1069.

Thereafter, Whisman filed a negligence action against Fawcett, the Eagles, and the V.F.W. seeking damages for his injuries. The jury subsequently returned a verdict in favor of all three defendants. Whisman appealed and the Court of Appeals reversed and remanded the case for a new trial. The Court held that Ind.R.Tr.P. 16(J) [1] rendered erroneous the trial court's decision to admit evidence of contributory negligence and incurred risk, and to instruct the jury accordingly. The Court determined that the pretrial order did not include these defenses as issues to be tried, and such issues therefore could only be tried if appellees could show that a modification of the pretrial order was necessary to prevent manifest injustice. The Court of Appeals concluded that no such showing was made and thus the trial court's adjudication of such issues was erroneous.

However, we now reverse because we believe that no modification of the pretrial order was necessary for the issues to be properly triable in this case. We believe the trial court did not exceed its discretion in interpreting its pretrial order to include the issues of contributory negligence and incurred risk since such issues are at least arguably inherent in the larger issues of negligence and proximate cause, which were included in the pretrial order.

We have had occasion to emphasize the proper place and function of the pretrial conference and ensuing order in the adjudicatory process. "When a pre-trial order specifies the issues of the case, the parties will not be permitted to go into other issues, unless the pre-trial order is amended," since "[t]he express purpose of Trial Rule 16 is to provide for a pre-trial conference in which to simplify the issues raised by the pleadings and to define these issues within a pre-trial order." *North Miami Consolidated School District v. State ex rel. Manchester Community Schools*, (1973) 261 Ind. 17, 20, 300 N.E.2d 59, 62. However, though we recognize the binding effect of a pretrial order, this does not mean that it is rigidly and pointlessly adhered to at trial. The application of preclusion always is viewed as a matter of judicial discretion. *Eagle Motor Lines, Inc. v. Galloway*, (1981) Ind.App., 426 N.E.2d 1322; *Dominguez v. Gallmeyer*, (1980) Ind.App., 402 N.E.2d 1295. Moreover, our courts have expressed agreement with the principle expressed in 62 Am.Jur.2d *Pretrial Conference* § 29 at 661 (1972) that:

"[a] pretrial order should be liberally construed to embrace *all the legal and factual theories inherent in the issues defined therein.* Any other construction of the order would tend to unduly constrict the trial of the case and defeat the central and salutary purpose of the rule on pretrial which is to insure the trial of every lawsuit on its merits." (Emphasis added.)

---

1. Rule 16(J) reads as follows:

"*(J) Pre-trial order.* The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleading, and the agreements made by the parties as to any of the matters considered which limit the issues for trial to those not disposed of by admissions or agreement of counsel, and such order when entered shall control the subsequent course of action, unless modified thereafter to prevent manifest injustice."

*See, Hundt v. LaCrosse Grain Co., Inc.,* (1981) Ind.App., 425 N.E.2d 687, *rev'd on other grounds,* (1983) Ind., 446 N.E.2d 327; *Galloway,* 426 N.E.2d at 1327. Likewise, we must keep in mind that a pretrial order "is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality. We must not allow ourselves to construe the pre-trial order in the spirit of common law pleading." *Century Refining Co. v. Hall,* 316 F.2d 15, 20 (10th Cir.1963). Furthermore, the reasons for avoiding overly technical application of pretrial orders are amplified when, as in this case, the pretrial order is not definitive, specific, complete, or detailed.[2] *See, e.g., Balon v. Hotel & Restaurant Supplies, Inc.,* (1967) 6 Ariz.App. 481, 433 P.2d 661, *vacated on other grounds,* (1968) 103 Ariz. 474, 445 P.2d 833; 62 Am.Jur.2d *Pretrial Conference* § 35 at 668 (1972).

■ Construing the pretrial order in this case with the generality evidenced by its wording, we see no basis for finding that the issues of contributory negligence and incurred risk were not impliedly included in the pretrial order. The order in this case generally raised the question of what was the proximate cause of plaintiff's injuries. We believe that it is certainly not unreasonable to suggest that any discussion of proximate cause in a negligence action necessarily involves the issue regarding whether contributory negligence was present. The fact that the issues are so inextricably bound together that they cannot be separated is evidenced by both the underlying rationale of Ind.R.Tr.P. 9.1(A) and also our historical understanding of contributory negligence. As Dean Harvey observes with respect to Rule 9.1(A):

> It is interesting to note that the Commission did not adopt as part of the new code the provisions of Federal Rule 8(c) which requires contributory negligence, assumption of risk and incurred risk to

be separately and specifically pleaded as affirmative defenses. Under the new Indiana rule, *by denying the allegation of negligence* the defendant has available to him any of the three defenses on which he relies. *The reason for so drafting the new rule, which is in reality a true codification of the old law, is that since all three defenses are really matters of proof tending to negate defendant's responsibility for damages, such matters of proof can fairly be said to be in issue when negligence is pleaded by the plaintiff. In effect, the plaintiff can be expected to know that the defendant will try to prove that plaintiff's injury was the result of plaintiff's own conduct.*" (Emphasis added.)

1 W. HARVEY, IND. PRACTICE, p. 563 (1969). Furthermore, a review of modern cases suggests that contributory negligence is in effect an extension of the rule of proximate cause. It further shows that a defendant in a negligence case must show proximate cause in order to have a successful contributory negligence defense. Thus, it would be logical to conclude that proximate cause is the underlying rationale for the doctrine of contributory negligence. *See, e.g., Huey v. Milligan,* (1961) 242 Ind. 93, 175 N.E.2d 698.

We conclude that the trial court did not exceed its discretion in allowing defendants to raise contributory negligence and incurred risk as issues at trial and thus there was no trial court error.

In plaintiff's original appeal he raised several issues which were not addressed because the Court of Appeals reversed the trial court on the issue discussed above. Consequently, it is appropriate for us now to consider those remaining issues.

■ Plaintiff first contends that the trial court erred in not allowing him to introduce a specific portion of Paul Everroad's depo-

---

**2.** The pertinent section of the pretrial order in this case reads as follows:
"G. CONTESTED ISSUES OF FACT. The contested issues of facts are:
"1. Negligence of the Defendants which was the proximate cause of plaintiff's injuries.

"2. Whether or not there was an intervening unforeseeable cause of the accident that would exculpate Defendant VFW 1987.
"3. Plaintiff's damages incurred as a result of his injuries."

sition. Everroad was an Eagles' bartender on duty the evening in question. Plaintiff asserts that the portion of the deposition excluded was relevant to his claim that Fawcett was a "habitual drunkard," as that term is used in Ind.Code § 7.1–5–10–14 (Burns 1984).[3] The part of the deposition that plaintiff sought to introduce reads as follows:

Q. "Prior to this accident?"

A. "Well, he'd come up there every Thursday night intoxicated or bowling."

Q. "You mean he was drunk?"

A. "Yeah."

Q. "What is his reputation as far as drinking?"

A. "Well, to me he's just a habitual drunkard."

Q. "Would you term him an alcoholic?"

A. "I would. Just like myself. I think I am, too."

Q. "Both of you alcoholics?"

A. "I think so."

Q. "Do you think Lawrence drank everyday?"

A. "Yeah."

Indeed, the record shows that the trial judge ruled that the above portion of Everroad's deposition could not be read to the jury. However, we cannot say that such a ruling constitutes an abuse of the trial court's discretion in ruling on the admissibility of evidence. Moreover, any error here is harmless because our examination of the record discloses that much of the testimony excluded was brought in by other questions and answers. Significantly, portions of Everroad's deposition which were read to the jury show that Everroad knew Fawcett for over fifteen years and every time he saw Fawcett the latter was "drunk." There was no trial court error here. *See Indiana State Highway Comm. v. Vanderbur,* (1982) Ind.App., 432 N.E.2d 418.

Plaintiff next contends that the trial court erred in granting judgment on the evidence in favor of Eagles as to whether it violated Ind.Code § 7.1–5–10–15 (Burns 1984). That statute makes it *"unlawful* for a person to sell, barter, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated." (Emphasis added.) Plaintiff concedes that there is no evidence of a direct sale by Eagles to Fawcett. Indeed, the record discloses that Eagles refused to serve Fawcett and that the two beers he consumed while there were purchased by two other persons. Nevertheless, he argues that it is sufficient to show that the seller knew or had good reason to believe when he sold the liquor that the purchaser intended to furnish it to another person whom the seller knew to be intoxicated. With this contention we agree. The proposition finds considerable support in other jurisdictions. *See, e.g., Bell v. Poindexter,* (1949) 336 Ill.App. 541, 84 N.E.2d 646; *Pilkins v. Hans,* (1910) 87 Neb. 7, 126 N.W. 864; 48 C.J.S. *Intoxicating Liquors* § 444 (1981). Furthermore, *Brattain v. Herron,* (1974) 159 Ind.App. 663, 309 N.E.2d 150, is particularly helpful on this issue. In that case a minor had consumed excessive amounts of beer and whiskey while visiting his older sister in Shelbyville, Indiana. The minor then left his sister's home enroute to his hometown, New Palestine, Indiana. The minor drove north towards New Palestine and at a point about half way across the median collided head-on with a southbound pickup truck. All three occupants of the pickup truck were killed. An action was brought against the minor and the minor's sister, Helen Brattain, for negligence. Plaintiffs' claim against Brattain was based on her alleged violation of a statute which prohibited the providing of any alcoholic beverage to a minor. The jury returned a verdict for the plaintiff and defendants appealed. Brattain's appeal was premised in part on her contention that the facts were insufficient as a matter of law

---

**3.** To show a violation of this statute, it must be proved that such person was, at about the date of the sale, in the habit of getting intoxicated. *Zeizer v. State,* (1874) 47 Ind. 129.

that she violated the statute. In discussing this issue, the Court of Appeals noted:

"Appellant Brattain has contended that the evidence most favorable to the appellees discloses that Mrs. Brattain did not violate the statute in question. With this contention we cannot agree. The evidence discloses that *while Mrs. Brattain did not serve the liquor to Mr. Farmer she was aware that Mr. Farmer and his friend were obtaining the beer and whiskey from her refrigerator.* The evidence discloses that Mrs. Brattain made no objection at any time to Mr. Farmer's consumption of the alcoholic beverages, even though she was present on the premises during the entire four hour period when Farmer and his friend were in her residence. It is our opinion that the evidence shows conclusively that Mrs. Brattain violated the statute in question." (Emphasis added.)

*Id.,* 309 N.E.2d at 157–58.

Similarly, we believe that plaintiff need not necessarily show a direct sale by Eagles to Fawcett in order to show a violation of the statute. Plaintiff could make out a violation by demonstrating that Eagles knew or had good reason to believe when they sold the liquor that the purchasers intended to furnish it to Fawcett whom Eagles knew to be intoxicated.

■ Before applying this principle to the facts in this case, we note our standard of review regarding a challenge to a trial court's decision to grant judgment on the evidence. Our task here is to consider evidence most favorable to the nonmoving party along with all reasonable inferences therefrom; from this evidence, we must determine whether there was evidence of probative value supporting each element which would justify submission of the claim to the jury. *Hall-Hottel Co. v. Oxford Square Co-op., Inc.,* (1983) Ind.App., 446 N.E.2d 25.

An examination of the record most favorable to the plaintiff discloses that Fawcett arrived at the Eagles Lodge at 11:00 p.m. on the evening in question. Bartenders there testified that Fawcett appeared drunk when he entered the bar, and one bartender refused to serve him any beer. Fawcett then left the bar area and went to another room where a dance was in progress. Fawcett stayed in the dance room for over an hour and never went back to the bar area to purchase any beer. But while there, two friends of Fawcett went into the bar room and purchased two beers. Fawcett drank one and one-half bottles of beer and left Eagles at approximately 1:00 a.m.

■ Plaintiff now argues that this is sufficient evidence of probative value which would justify submission of the claim to the jury. We disagree. Clearly, the Eagles' bartenders' testimony that Fawcett appeared drunk is strong evidence that they knew he was intoxicated. However, there is insufficient evidence to show that Eagles knew or had reason to know when they sold the beer that the purchasers intended to furnish it to Fawcett. First, there is no evidence that the bartenders knew the purchasers were with Fawcett at any time or even that they were friends of his. Second, since Fawcett had the beer in another room, out of the bartenders' sight, there is no indication that they knew or had reason to know that Fawcett was drinking and someone was supplying him with beer. We conclude that plaintiff has simply failed to produce any evidence from which a reasonable inference could be drawn that any Eagles employee knew that Fawcett was drinking or that any purchaser was furnishing beer to him. Therefore, there was no trial court error in granting defendant's motion for judgment on the evidence.

Plaintiff next alleges that the trial court erred in granting judgment on the evidence on plaintiff's claim that V.F.W. violated Ind.Code § 7.1–5–10–14 (Burns 1984). This statute declares it "unlawful for a permittee to sell, barter, exchange, give, provide, or furnish an alcoholic beverage to a person whom he knows to be a habitual drunkard." The record shows the trial court ruled for defendant on this question because plaintiff failed to produce any evidence that V.F.W. was a "permittee" or

that they knew Fawcett was a habitual drunkard.

Plaintiff claims that there was sufficient evidence introduced at trial for the jury to infer that V.F.W. was a "permittee" and therefore subject to the prohibitory statute. Ind.Code § 7.1-1-3-30 (Burns 1984) specifically defines "permittee" as "[a] person [4] who is the holder of a valid permit under this title." Although the record shows that plaintiff failed to produce any direct evidence that V.F.W. held a valid permit, we believe the evidence he did produce provides a basis from which the jury could infer that V.F.W. was a permittee. It is unlawful to sell alcoholic beverages in this state without first obtaining a permit. Ind.Code § 7.1-5-10-5 (Burns 1984). An examination of the record discloses that Fawcett had frequented the V.F.W. for the past fifteen years and always bought alcoholic beverages there. He also bought beer from the V.F.W. bartender the night of the incident. From this evidence, the jury could have concluded that V.F.W. held a valid permit to sell alcoholic beverages since it was unlawful for them to do so without one. Thus, the trial court erred in taking away from the jury the issue whether V.F.W. was a "permittee" as the term is used in the statute. However, the trial court also found no evidence to support plaintiff's claim that V.F.W. knew Fawcett was a habitual drunkard. Plaintiff's brief on appeal contains no discussion whatsoever on this issue, and therefore any error here is waived. The failure to present any argument or citations of authority in support of a contention raised on appeal constitutes waiver of the alleged error. *Corn v. City of Oakland City*, (1981) Ind.App., 415 N.E.2d 129.

Plaintiff next contends that the trial court erred in granting judgment on the evidence for Eagles and V.F.W. on the issue of defendants' liability under principles of common law negligence. He as-

serts that the trial court wrongly concluded that there was no such thing as a common law cause of action. He maintains that such a conclusion is inconsistent with our decision in *Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847. Elder did establish for the first time in Indiana that there is a common law action against those unlawfully selling or furnishing intoxicating liquor in favor of third persons subsequently injured by the acts of the purchasers as a result of their intoxicated condition. However, a careful review of the record shows the trial court ruled as it did not because it determined a common law action to be nonexistent; rather, it properly concluded that plaintiff's claim fell under specific statutory provisions which serve as a premise for a civil action for damages. Indiana law clearly endorses the proposition that a violation of the liquor laws will result in a civil action. *See, e.g., Elder*, 217 N.E.2d at 851; *Parrett v. Lebamoff*, (1980) Ind.App., 408 N.E.2d 1344; *Elsperman v. Plump*, (1983) Ind.App., 446 N.E.2d 1027. General principles of common law negligence apply only in the absence of a special statutory provision. *Elder*, 217 N.E.2d at 853.

Here, the facts underlying plaintiff's claim that defendants violated Ind.Code § 7.1-5-10-14 (Burns 1984) and Ind.Code § 7.1-5-10-15 (Burns 1984) are the same as those he believes support his common law theory. Plaintiff alleges no facts to establish a duty under common law principles other than his claim that Eagles and V.F.W. sold liquor to Fawcett whom they knew to be a habitual drunkard and in a state of intoxication at the time of sale. Thus, any liability here is governed by specific statutory provisions and principles of common law need not be applied. Under these circumstances, we conclude that the trial court did not err in finding no evidence to allow the issue of common law negligence to go to the jury.

Plaintiff next contends the trial court erred in giving the modified versions

---

**4.** V.F.W. falls in the category of a "person" as that term is defined in Ind.Code § 7.1-1-3-31

(Burns 1984).

of V.F.W.'s instruction No. 4 and Eagles' instruction No. 10. His contention is based on the allegation that the instructions are incorrect statements of the law and were potentially confusing to the jury. The challenged instructions read as follows:

"*V.F.W. Final Instruction No. 4 .*

"I instruct you that, absent the statute making it illegal to sell or provide alcoholic beverages to a person who is known to be intoxicated which the plaintiff contends the V.F.W. violated, there would be no cause of action against the V.F.W. by Brian Whisman.

"*Eagles Final Instruction No. 10*

"Absent the statute which the plaintiff contends the Fraternal Order of Eagles violated, there would be no cause of action against the Fraternal Order of Eagles by Brian Whisman."

Plaintiff maintains that these instructions are inconsistent with the *Elder* principle that a provider of intoxicating liquor may be liable under principles of common law negligence. With this contention we cannot agree. Properly read, these instructions merely reflect the fact that any other cause of action, i.e., common law negligence, was not applicable in this case since the trial court had previously removed the common law issue from the jury's consideration. Thus, the instructions were not incorrect statements of the law as it applies to this case. Neither do we believe that the instructions were necessarily confusing to the jury and therefore inappropriate. Plaintiff argues that the jury might have interpreted these instructions to mean that Ind.Code § 7.1–5–10–14 (Burns 1984) and Ind.Code § 7.1–5–10–15 (Burns 1984) were no longer part of the case. We disagree. Reasonably construed, the instructions merely inform the jury that the violation of either statute was the only basis for any liability on the part of Eagles and the V.F.W. Furthermore, the trial court specifically charged the jury in other instructions that both prohibitory statutes were part of the case. Instructions must be considered as a whole and with reference to each other. *State v. Totty*, (1981) Ind. App., 423 N.E.2d 637. There was no trial court error here.

Plaintiff finally argues that the trial judge committed reversible error when he told the jury prior to closing arguments and final instructions that plaintiff would argue first because he had "a relative higher burden of proof." Plaintiff asserts that the jury might have misinterpreted the comment to mean that plaintiff had the burden of proof on the contributory negligence issue. We agree that such an interpretation would be erroneous. However, due consideration must be given the fact that the trial judge's remark was only preliminary and not part of the formal charge. At the time the comment was made, plaintiff's counsel immediately asked the trial judge to clarify his statement. The trial judge did so when he noted that the relative burdens of the parties "will become crystal clear to them [the jury] when I read the final instructions." A review of those instructions shows that the trial court properly charged the jury on all the issues regarding burden of proof and thus eliminated any confusion which the trial judge's preliminary remark might have created.

For all of the foregoing reasons, transfer is granted; the opinion and decision of the Court of Appeals are vacated, and the trial court's judgment is affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

The trial marked by the approach of the opinion of the Court of Appeals is the correct one. It enhances the values and purposes sought to be achieved by the pre-trial conference required under Trial Rule 16, and the expenditure of time and effort which it contemplates. The conference and its formal product, the pre-trial order, bring the case into focus and render it susceptible of trial according to legal principles. Here, the defendants Fawcett and

Eagles said nothing regarding their view of the issues of fact. The defendant VFW made only the vague statement regarding an intervening cause, which most strongly suggested the exercise of the will by Fawcett when he imbibed in the drinks or the purchase by others of the drinks for him. The next case we see may involve equally vague statements by a plaintiff. If there is time in our state judicial process for the pre-trial conference, and if it is to be maintained, then it should be done fully and correctly. A trial today upon the vague, general pleadings permitted by our rules, with no specific pretrial order as guidance, is nothing but a three ring circus.