**INDIANAPOLIS CONVENTION & VISITORS ASSOCIATION, INC., Appellant (Plaintiff, Counter–Defendant Below),**

v.

**INDIANAPOLIS NEWSPAPERS, INC. Appellee (Defendant, Counter–Claimant Below).**

**No. 30A04–8910–CV–441.**

Court of Appeals of Indiana, Fourth District.

Sept. 11, 1990.

Opinion on Denial of Rehearing Nov. 15, 1990.

Peter G. Tamulonis, John B. Drummy, Kightlinger & Gray, Indianapolis, for appellant.

Robert P. Johnstone, Jan M. Carroll, Barnes & Thornburg, Indianapolis, for appellee.

CHEZEM, Judge.

## Case Summary

Appellant, Indianapolis Convention & Visitors Association, Inc. (ICVA), appeals the trial court's determination that it is a governmental entity subject to the Indiana Access to Public Records Act. We affirm.

## Issue

Whether the trial court's determination that the ICVA meets the statutory definition of "public agency" in the Indiana Access to Public Records Act is clearly erroneous.

## Facts

ICVA is a private, not-for-profit organization which has been in existence since 1923 and was incorporated in 1932. The membership of ICVA consists of individuals, associations and corporations who are interested in promoting and advertising the City of Indianapolis as a major site for conventions, cultural and sports events, trade shows, a destination for tourism, and a meeting place for all types of gatherings. ICVA has approximately six hundred (600) member companies.

ICVA has three (3) primary sources of revenue: advertising revenue, membership dues, and payments under written contract with the Capital Improvement Board of Managers of Marion County, Indiana (CIB). The CIB funds ICVA pursuant to Ind.Code 36–10–9–6(14).[1] The revenue ICVA receives from the CIB represents approximately sixty to seventy percent (60–70%) of ICVA's total revenue.

ICVA first contracted with the CIB in 1967, executed another agreement in 1978, and, pursuant to a request by the Indiana State Board of Accounts that "the CIB and the ICVA enter into a formal contract and that the ICVA provide the CIB with written progress reports," executed a new agreement in early 1985.[2]

---

1. IC 36–10–9–6(14) reads: Prepare and publish descriptive material and literature relating to the facilities and advantages of a capital improvement and do all other acts that the board considers necessary to promote and publicize the capital improvement, including the convention and visitor industry, and serve the commercial, industrial, and cultural interests of Indiana and its citizens. The board may assist, cooperate, and fund governmental, public, and private agencies and groups for these purposes.

2. The provisions of the 1985 contract, which was renewed through 1989, are as follows:

WHEREAS, the Indianapolis Convention and Visitors Association, Inc., an Indiana not-for-profit corporation, ("ICVA") has for many years solicited conventions, trade shows, exhibitions, athletic contests and other events for the City of Indianapolis and the Indiana Convention Center and Hoosier Dome; and

WHEREAS, in recognition of the valuable service being provided by the ICVA, the Capital Improvement Board of Managers of Marion County, ("CIB") has financially supported the ICVA by allocating a portion of the receipts from the Hotel–Motel Tax and by furnishing offices, meeting space, furniture and equipment without cost; and

WHEREAS, the ICVA and the CIB desire to continue their beneficial relationship and to set forth the terms of their understandings in writing.

1. The ICVA is appointed representative of the CIB to solicit conventions, trade shows, exhibitions, athletic contests and other events to be held in the Indiana Convention Center and Hoosier Dome and to assist the CIB in handling such events.

2. Any proposal concerning the use of the Indiana Convention Center and Hoosier Dome shall be submitted by the ICVA to the CIB for final approval.

3. The CIB shall pay to the ICVA annually a portion of the receipts from the hotel-motel tax as determined by the CIB in its annual budget. The CIB may also assist the ICVA by providing offices, meeting space, furniture and equipment without cost.

4. The ICVA shall report to the CIB semi-annually on its promotional activities for soliciting conventions, trade shows, exhibitions, athletic contests and other events and the results of its activities.

5. This agreement shall be in full force and effect from January 1, 1985, to December 31, 1985, unless terminated by either party with thirty (30) days written notice. Unless so terminated by November 30 of any year, this agreement shall be automatically renewed for the next year.

Via letters dated June 1 and 12, 1989, Indianapolis Newspapers, Inc. (INI), demanded that ICVA produce copies of internal expense vouchers for ICVA officials, including chairman and president, for the years 1978–1989. On June 21, 1989, INI threatened to sue ICVA if it did not immediately produce the records. On June 22, 1989, ICVA filed a Complaint against INI for a declaratory judgment that ICVA is not a public agency subject to the Indiana Access to Public Records Act, or, alternatively, that the records sought by INI were trade secrets as defined by the Uniform Trade Secrets Act.[3]

INI subsequently filed a Counterclaim for an injunction to prevent alleged violations of the Indiana Access to Public Records Act by ICVA. The trial court bifurcated the issue of whether ICVA was a public agency subject to the Act from the issue of whether the documents sought by INI were trade secrets.

A trial was held on the issue of whether ICVA was a public agency on September 21, 1989. On October 3, 1989, the trial court found ICVA subject to the Act and ordered ICVA to produce, subject to a protective order, its expense records and vouchers for ICVA officials for 1978–1989. The trial court's findings of fact and conclusions of law are as follows:

### FINDINGS OF FACT

1. INI is an Indiana Corporation with its principal place of business in Indianapolis, Indiana. INI is engaged in the gathering and dissemination of news and publishes The Indianapolis News ("The News").

2. The News is a newspaper of general circulation serving readers and the public in the City of Indianapolis and Marion County, Indiana.

3. The ICVA is a not-for-profit corporation organized under the laws of the State of Indiana.

4. As part of its newsgathering and reporting, The News reports on the activities of the ICVA.

5. The Capital Improvement Board of Managers of Marion County (the "CIB")

is a public agency created pursuant to IND.CODE 36–10–9–1 *et seq.* (Supp. 1989).

6. The tax receipts and other moneys paid to the CIB are public funds, and the treasurer of the CIB must account for them as public funds, pursuant to the command of the CIB statute. IND. CODE 36–10–9–9.

7. Pursuant to the 1985 Contract between the ICVA and the CIB and the practices followed for years by the parties to the Contract, the CIB annually allocates to the ICVA a portion of the proceeds of the Marion County motel-hotel tax and also provides offices, meeting space, furniture and equipment at no charge to ICVA. The CIB funds the ICVA pursuant to the powers and duties set forth in IND.CODE 36–10–9–6(14) which authorizes the CIB to fund governmental, public, and private agencies and groups for the purpose of promoting and publicizing the convention and visitor industry.

8. The ICVA's allocation of a portion of the hotel-motel tax receipts is paid to the ICVA out of the CIB's general fund. The moneys in the CIB's general fund are public funds, and are audited as such by the State Board of Accounts.

9. Under the Contract between the CIB and the ICVA and the practices which have been followed for many years, the annual allocation of financial support for ICVA is tied to the CIB's receipt of revenues from the hotel-motel tax. Annually, the funding from the CIB represents approximately 20% of the receipts from the hotel-motel tax. The CIB's funding of the ICVA is not dependent on the ICVA booking a specific number of conventions, filling a set number of hotel room-nights or convention days or any other objective measure of the ICVA's performance.

10. The ICVA does not submit itemized claims or invoices to the CIB in order to receive the public funds from the CIB. The CIB, in turn, has not required the submission of itemized claims or invoices from the ICVA before making payments to the ICVA, despite the requirement for

---

**3.** The trial court's final judgment in favor of INI on the trade secrets issue is likewise being appealed by ICVA in Cause No. 30A04–8911–CV– 00541; however, there is a motion to dismiss pending.

such under IND.CODE 36–10–9–9(d).

11. The amount of the payments by the CIB to the ICVA under the Contract was not negotiated by the parties.

12. The CIB makes its payments to the ICVA in monthly installments. The first eleven monthly installments are figured as $\frac{1}{12}$ of the allocated portion of the projected receipts from the hotel-motel tax. The twelfth installment is adjusted upward or downward to reflect actual hotel-motel tax receipts in a given year.

13. The ICVA receives its monthly installments of public funds from the CIB regardless whether any conventions booked by the ICVA have occurred during that month. The ICVA also receives public funds allocated as a portion of the hotel-motel tax receipts which are attributable to events, such as the Indianapolis 500–Mile Race, that it had no role in bringing to Indianapolis.

14. The public funds received by the ICVA from the CIB are not fees for promotional and booking services. That term appears nowhere in the ICVA's Contract with the CIB, nor in any other document establishing the relationship between the ICVA and the CIB.

15. The ICVA has consistently described the public funds it receives from the CIB as "indirect public support." Its federal and state tax returns for the tax years 1982 through 1987 describe the CIB funding as such. Only after a question was raised about the public funding received from the CIB did the ICVA file an amended 1987 return in June 1989 characterizing the funding as "convention and tourism promotion."

16. The funds received from the CIB annually exceed 25% of the total revenues of the ICVA. In fact, money from the CIB in the last four years has funded from 60% to 79% of the ICVA's total expenditures ... By virtue of the receipt of the CIB funds to support and maintain the ICVA, the ICVA is an entity subject to audit by the Indiana State Board of Accounts pursuant to IND.CODE 5–11–1–16(e) and –25 (1987).

17. The State Board of Accounts informed the ICVA on June 23, 1989, that it was subject to audit and that the ICVA should file an Entity Annual Report. The ICVA has never filed an Entity Annual Report.

18. On June 1, 1989, Dunstan A. McNichol, a reporter for The News, submitted a written request to the ICVA for access to the ICVA's expense vouchers under the Indiana Access to Public Records Act. The request for access was denied.

## CONCLUSIONS OF LAW

1. The CIB's funding of the ICVA by allocating a portion of the receipts of the Marion County hotel-motel tax constitutes support and maintenance of ICVA with public funds. The payments to the ICVA are indirect public support, and are not fees for promotional and booking services. The ICVA is therefore subject to audit by the State Board of Accounts.

2. Because the ICVA is subject to audit by the State Board of Accounts, the ICVA meets that definition of "public agency" under the Access to Public Records Act, IND. CODE 5–14–3–2 (1987 and Supp.1989).

3. By carrying out the convention and tourism promotion activities of the CIB, the ICVA is exercising a delegated local government power. In so doing, the ICVA meets another definition of "public agency" under the Indiana Access to Public Records Act, IND.CODE 5–14–3–2 (1987 and Supp.1989).

4. To the extent any of the foregoing conclusions of law are findings of fact, they are specifically incorporated as findings of fact.

/s/

On October 4, 1989, ICVA filed a Motion to Stay Further Proceedings and/or to Permit Immediate Appeal. The trial court denied the motion on the same day. ICVA requested this Court to stay the proceedings and suspend the injunction so it could proceed with an interlocutory appeal, but this Court denied ICVA's request on October 12, 1989.

Additional facts will be added as needed.

## Discussion

The trial court entered special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A)(1). On appeal, a trial court's judgment entered pursuant to T.R. 52 will be reversed when the findings of fact, conclusions of law, or judgment are clearly erroneous. Ind. Appellate Rule 15(N); *Rose Acre Farms, Inc. v. Greeman Real Estate* (1987), Ind.App., 516 N.E.2d 1095.

■ The Indiana Access to Public Records Act (Act) is codified at Ind.Code 5–14–3–1 et seq., and reads in part:

... [i]t is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access ... and not on the person seeking to inspect and copy the record.

"Public agency" means any entity that is subject to an audit by the State Board of Accounts. IC 5–14–3–2(3)(B). Thus, the threshhold question is whether ICVA is an entity that is subject to audit by the State Board of Accounts.

If an entity receives more than twenty-five percent (25%) of its disbursements from public appropriations, the entity is subject to complete audit by the State Board of Accounts. IC 5–11–1–9. "Entity," as used in IC 5–11–1–9, is defined as "any provider of goods, services, or other benefits that is [m]aintained in whole or in part at public expense or supported in whole or part by appropriations or public funds or by taxation." IC 5–11–1–16.

ICVA argues the monies it receives from the CIB are fees for promotional and booking services provided pursuant to contract; thus, ICVA is not "maintained or supported by public funds." Notwithstanding its concession that "the CIB is a public agency within the meaning of the Access to Public Records Act and that the monies paid by the CIB to the ICVA are public funds," ICVA specifically argues the monies "are used merely as a measuring stick of the amount the CIB wants to spend on promotional efforts." ICVA's argument is not convincing.

ICVA is maintained and supported in large part by public funds. CIB provides ICVA with office space, furniture and equipment at no cost. From 1979 to 1987, the CIB paid ICVA an amount approximately equal to twenty percent (20%) of the hotel/motel tax receipts received by the CIB. For 1988 and 1989, the CIB paid ICVA a fixed amount in addition to a percentage of the hotel/motel tax. ICVA is paid from the general fund in twelve (12) monthly installments. The first eleven (11) are equal to one-twelfth (1/12) of the fixed amount which the CIB has agreed to pay. The twelfth payment is dependent upon actual hotel/motel tax receipts and may be more or less in value than the other eleven payments. While we recognize a portion of the total tax receipts can be attributed to ICVA's activities, the amount of money ICVA receives is based upon how much tax is collected by the CIB and is not related to the amount of business ICVA brings to Indianapolis.

ICVA also argues it is not a provider of benefits as contemplated by IC 5–11–1–9. ICVA's benefit to the public is clear. ICVA's function is to promote Indianapolis as a major site for conventions, cultural and sports events, trade shows, and a destination for tourism; these events, in turn, generate revenue for restaurants and hotels. ICVA contends that the benefit intended by IC 5–11–1–9 is social services; however, ICVA provides no authority for this proposition. Ind. Appellate Rule 8.3(A). ICVA meets the definition of "entity" under IC 5–11–1–16.

■ ICVA next argues that it is not exercising a delegated, local governmental power as provided by IC 5–14–3–2(1) or (2)(C). We agree.

Under IC 36–10–9–6(14), the CIB may [p]repare and publish descriptive material and literature relating to the facilities and advantages of a capital improvement and do all other acts the Board considers necessary to promote and publicize the capital improvement, including the convention and visitor industry, and serve the commercial, industrial, and cultural interests of Indiana and its citizens. The Board may assist, cooperate, and fund governmental, public, and private agencies and groups for these purposes.

The CIB is not required by statute to promote or publicize the facilities it controls. The CIB's decision to promote or publicize the facilities constitutes the exercise of its governmental authority under IC 36–10–9–6(14). ICVA does not exercise delegated governmental power when it physically carries out the CIB's decision; the CIB has not delegated to the ICVA the power to decide whether to promote the CIB's facilities.

ICVA last argues "the trial court's interpretation of the [Indiana] Access to Public Records Act is contrary to the express policy of the act, will have far-reaching negative consequences, and raises questions of constitutional infringements."

While we agree that the purpose of the Act is to open governmental affairs to pub-

lic scrutiny,[4] we cannot agree that ICVA is not subject to the Act simply because it is not a "governmental entity" or "public agency" as these phrases are commonly understood. The legislature prescribed that an entity subject to audit by the State Board of Accounts was within the purview of the Act. IC 5–14–3–2(3)(B). Clearly, the legislature intended the public to have the right to investigate whether its tax money was properly spent.

ICVA suggests the trial court's interpretation will subject all entities that enter into a contract with the State (or a political subdivision of the State) to audit by the State Board of Accounts. Only those entities prescribed by IC 5–14–3–2 and which the State Board of Accounts has notified of pending audit are subject to the Act; all other entities who receive monies in payment in exchange for their services are not within the purview of the Act.

■ ICVA contends that the Act is unconstitutional as it invades the ICVA's right to privacy. None of the cases cited by ICVA discuss the right of a government to audit an entity which receives public funds for a public purpose. *See Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 80 (failure to cite relevant authority constitutes waiver). Here, ICVA receives approximately seventy percent (70%) of its revenue from public funds; therefore, the legislature has entitled the public to review the expenditure of those funds.

ICVA alleges that the interpretation of the Act has impaired its ability to contract. ICVA does not present cogent argument or cite relevant authority to support its claims that ICVA's contract with CIB has been impaired or that records created before the effective date of the Act are excluded from the Act's directives. Accordingly, the argument is waived. App.R. 8.3(A); *Whisman v. Fawcett* at 80; *Baesler's Super–Value v. Indiana Commissioner of Labor* (1986), Ind.App., 500 N.E.2d 243, 249.

■ ICVA claims "to the extent the public record law is deemed to cover private companies which provide goods or services to government entities pursuant to contract, it is void for vagueness." As discussed previously, only those entities prescribed by IC 5–14–3–2 are subject to the Act; clearly, the legislature did not intend the Act to include all entities who contract

and receive compensation in exchange for their services.

In sum, ICVA meets the definition of "entity" under IC 5–11–1–16. Moreover, on June 23, 1989, the State Board of Accounts informed ICVA that it was subject to audit. Thus, INI may access those internal expense vouchers of ICVA officials back to and including June 23, 1989.

Affirmed.

MILLER, P.J., concurring.

HOFFMAN, P.J., dissenting with separate opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent.

It is clear from the 1985 contract that the CIB's payments to the ICVA constituted fees for promotional and booking services rather than public support or maintenance. Pursuant to the terms of the contract, the ICVA agreed "to solicit conventions, trade shows, exhibitions, athletic contests and other events to be held in the Indiana Convention Center and Hoosier Dome and to assist the CIB in handling such events." The ICVA also agreed to "report to the CIB semi-annually on its promotional activities for soliciting conventions, trade shows, exhibitions, athletic contests and other events and the results of its activities." Clearly, the ICVA is a contractor for services, not the recipient of a governmental subsidy. Any other interpretation would make all persons and businesses contracting with the State public agencies subject to the public records act.[1]

I would reverse the judgment of the trial court.

### PETITIONS FOR REHEARING

On June 22, 1989, Appellant, Indianapolis Convention & Visitors Association, Inc. (ICVA) filed suit against Appellee, Indianapolis Newspapers, Inc. (INI) for a declaratory judgment that ICVA is not a public agency subject to the Indiana Access to Public Records Act, or alternatively, that the records sought by INI were trade secrets as defined by the Uniform Trade Secrets Act. INI subsequently filed a Counterclaim for an injunction to prevent alleged violations of the Indiana Access to Public Records Act by ICVA. The trial

---

**4.** IC 5–14–3–1.

**1.** IND. CODE § 5–14–3–1 *et seq.*

court bifurcated the issue of whether ICVA was a public agency subject to the Indiana Access to Public Records Act from the issue of whether the documents sought by INI were trade secrets. On October 3, 1989, the trial court found ICVA subject to the Act and ordered ICVA to produce, subject to a protective order, its expense records and vouchers for ICVA officials for 1978–1989.

On October 4, 1989, ICVA appealed the trial court's ruling.[1] In an opinion dated September 11, 1990, this court addressed the applicability of the Indiana Access to Public Records Act to ICVA and found that because ICVA is an entity subject to audit by the State Board of Accounts under Ind. Code 5–14–3–2(3)(B), ICVA meets the definition of "public agency" under the Indiana Access to Public Records Act. This court further found that ICVA became subject to audit on June 23, 1989; thus, on that date, ICVA became subject to the Indiana Access to Public Records Act.

Both ICVA and INI have petitioned this court for rehearing of our decision. We deny the parties' petitions; however, we feel that elaboration of our decision would be beneficial to both parties.

ICVA is a private, not-for-profit organization which has been in existence since 1923; as such, ICVA was not required to disclose information to parties not of its choosing. However, when the legislature enacted the Indiana Access to Public Records Act, it prescribed that an entity subject to audit by the State Board of Accounts was within the purview of the Act. IC 5–14–3–2(3)(B). INI correctly argued that the determination by the State Board of Accounts to audit ICVA was the point at which ICVA became subject to the request for information from INI.

Fairness to an organization not previously subject to public requests for documentation dictates that it not be required to produce that documentation until it falls within the purview of the Indiana Access to Public Records Act.

Petitions for Rehearing denied.

---

1. ICVA appealed the trial court's final judgment in favor of INI on the trade secrets issue in Cause No. 30A04–8911–CV–541.