**RUST–OLEUM CORPORATION and ROC Sales, Inc., Appellants–Defendants, Third–Party Plaintiffs,**

v.

**Carl F. FITZ and Theresa Fitz, Appellees–Plaintiffs,**

and

**United States Can Company, Appellee–Third–Party Defendant.**

No. 71A03–0303–CV–95.

Court of Appeals of Indiana.

Jan. 16, 2004.

Transfer Denied May 7, 2004.

---

Robert J. Palmer, May Oberfell Lorber, South Bend, IN, Attorney for Appellants.

Joseph R. Fullenkamp, D. Michael Anderson, Michael J. Hays, Barnes & Thornburg, South Bend, IN, Attorneys for Appellees Carl F. Fitz and Theresa Fitz.

## OPINION

SULLIVAN, Judge.

Appellee–Plaintiffs Carl F. Fitz and Theresa Fitz ("the Fitzes") brought suit against Appellant–Defendants Rust–Oleum Corp. and ROC Sales, Inc. (collectively "Rust–Oleum"). Rust–Oleum then impleaded United States Can Co. ("U.S. Can") as a third-party defendant. Upon the Fitzes' motion, the trial court later removed U.S. Can from the proceedings on the Fitzes' claims against Rust–Oleum. Rust–Oleum now challenges the trial court's decision to grant this motion and the jury verdict entered against it, pre-

senting six issues for our review, which we renumber and restate as the following two: (1) whether the trial court erred in removing U.S. Can from the proceedings on the Fitzes' claims against Rust–Oleum, and (2) whether the trial court erred in striking a juror affidavit submitted in support of Rust–Oleum's motion to correct error.

We affirm.

The facts relevant to this appeal are relatively undisputed. On November 10, 1992, after Mr. Fitz was injured while using a can of spray paint, the Fitzes filed a complaint against Rust–Oleum alleging a products liability claim and negligence. According to the complaint, Mr. Fitz was using a can of spray paint marketed by Rust–Oleum when the can exploded and the contents ignited, causing injury to Mr. Fitz. The complaint also set forth a claim of loss of consortium on the part of Mrs. Fitz.

On December 10, 1992, Rust–Oleum filed its answer. On July 20, 1994, Rust–Oleum filed a third-party complaint, which was amended on September 27, 1994. In this third-party complaint Rust–Oleum sought to be indemnified by several parties, one of which was U.S. Can. On December 15, 1995, the parties filed a stipulation dismissing Rust–Oleum's third-party complaint against all third-party defendants save U.S. Can. U.S. Can filed its answer to the third-party complaint on July 23, 1996. Following unsuccessful attempts at mediation, a pre-trial conference was held on February 14, 2002. On October 22, 2002, a pre-trial order was entered. According to the pre-trial order, the Fitzes claimed that when the seller conveyed the can of spray paint to Mr. Fitz, the can was in a defective condition which was unreasonably dangerous to them as defined by the Indiana Products Liability Statute. The Fitzes sought damages for medical

expenses, pain and suffering, and loss of consortium. The Fitzes also contended that "whether or not U.S. Can . . . is liable to [Rust–Oleum] for any verdict entered for the Fitzes in this case is an issue between those parties, and does not affect the Defendants' liability to the Fitzes." Appendix at 29.

Rust–Oleum's defense, as set forth in the pre-trial order, was that the can of spray paint had been misused by being heated near a source of ignition. Rust–Oleum also contended that the can was not defectively manufactured, was not the subject of a design defect, and was filled and tested within D.O.T. specifications. Rust–Oleum further contended that the can contained adequate warnings and that Mr. Fitz's damages were not as severe as he claimed. The pre-trial order further stated Rust–Oleum's contention that it "added [U.S. Can] as a party to this lawsuit to assist in defending against the claims made by the plaintiffs." *Id.* at 29.

U.S. Can contended as per the pre-trial order that the can was manufactured within D.O.T. specifications, was not defectively manufactured or defectively designed, and was not unreasonably dangerous. U.S. Can also claimed that Mr. Fitz misused the can by excessive heat being applied to the can. U.S. Can further asserted that the Fitzes had not been damaged as alleged and noted that the Fitzes had no claim for damages against U.S. Can.

Trial commenced on October 28, 2002, and during its opening statement, Rust–Oleum mentioned that, if Rust–Oleum were to be found liable, it would "have a claim against [U.S. Can]. . . ." *Id.* at 81.[1] U.S. Can objected to this, asserting that the pre-trial order had not preserved an

indemnity claim against it. Rust–Oleum argued that the third-party complaint remained "part of the case," but the trial court agreed with U.S. Can, and Rust–Oleum withdrew its comments. *Id.* Upon returning to its opening statement, Rust–Oleum stated that it was not seeking indemnity from U.S. Can, but instead U.S. Can was helping Rust–Oleum defend against the Fitzes' claims.

On October 29, before the Fitzes' continued with their case-in-chief, the Fitzes filed a motion to remove U.S. Can as a party and to strike one of U.S. Can's pending motions as moot. The trial court granted the motion and removed U.S. Can from the case. The jury eventually returned a verdict against Rust–Oleum in the amount of $300,000, and on October 31, 2002, the trial court entered judgment thereon.

On December 2, 2002, Rust–Oleum filed a motion to correct error, a supplemental motion to correct error, and a memorandum in support thereof. In support of its motion to correct error, Rust–Oleum submitted the affidavit of one of the jurors. The Fitzes responded on December 20, 2002 by filing a motion to strike the juror affidavit, or in the alternative to consider the second affidavit of the same juror, and a response in opposition to the motion to correct error. On February 19, 2002, the trial court held a hearing on these motions, after which it granted the motion to strike and denied the motion to correct error.

■ Rust–Oleum maintains upon appeal that the trial court erred in granting the motion to remove U.S. Can from the trial and support this claim with several arguments, the first of which is that U.S. Can

---

**1.** The opening statements are not in the transcript. However, in the Fitzes' response to Rust–Oleum's motion to correct error, they quoted portions of the opening statements, including the quote above. The Fitzes refer to this quote in their appellee's brief, and Rust–Oleum makes no challenge to the accuracy of the quotation in its reply brief.

was properly impleaded as a third-party defendant and was therefore a proper party at trial. Third-party practice, or impleader, is governed by Indiana Trial Rule 14, which reads in relevant part:

"(A) **When defendant may bring in third party.** A defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff must file the third-party complaint with his original answer or by leave of court thereafter with good cause shown. The person served with the summons and the third-party complaint, hereinafter called the third-party defendant, as provided in Rules 12 and 13 may make:

(1) his defenses, cross-claims and counterclaims to the third-party plaintiff's claims;

(2) his defenses, counterclaims and cross-claims against any other defendants or third-party defendants;

(3) any defenses or claims which the third-party plaintiff has to the plaintiff's claim which are available to the third-party defendant against the plaintiff; and

(4) any defenses .or claims which the third-party defendant has as against the plaintiff.

The plaintiff may assert any claim against the third-party defendant who thereupon may assert his defenses, counterclaims and cross-claims, as provided in Rules 12 and 13. A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant."

Here, Rust–Oleum impleaded U.S. Can as a third-party defendant pursuant to T.R. 14(A), seeking indemnification by U.S. Can. This does not seem improper. *See TLB Plastics Corp., Inc. v. Procter & Gamble Paper· Products Co.*, 542 N.E.2d 1373 (Ind.Ct.App.1989) (noting that although obligation to indemnify does not arise until the party seeking indemnity suffers loss or damages, T.R. 14 permits a claim for indemnity to be litigated contemporaneously with injured party's claim), *trans. dismissed.* The Fitzes argue that it does not matter whether U.S. Can was properly impleaded by the third-party complaint. Instead, the Fitzes insist that the nature of the case was changed after the pre-trial order failed to preserve the third-party indemnity claim, and that U.S. Can was therefore not a proper party in the trial on their claims against Rust–Oleum.

■ This brings us to Rust–Oleum's argument that the trial court's action was contrary to the pre-trial order. Trial Rule 16(J), governing pre-trial orders, states in relevant part:

"The court shall make an order which recites the action taken at the [pre-trial] conference, the amendments allowed to the pleading, and the agreements made by the parties as to any of the matters considered which limit the issues for trial to those not disposed of by admissions or agreement of counsel, and such order when entered shall control the subsequent course of action, unless modified thereafter to prevent manifest injustice. . . ."

The law is well settled that a pre-trial order shall control the proceedings once it is entered. *Webber v. Miller,* 731 N.E.2d 476, 478 (Ind.Ct.App.2000). The express purpose of T.R. 16 is to provide for a pre-trial conference to simplify the issues raised by the pleadings and to define these

issues within a pre-trial order. *N. Miami Consol. Sch. Dist. v. State ex rel. Manchester Cmty. Sch.,* 261 Ind. 17, 20, 300 N.E.2d 59, 62 (1973). Although we recognize the binding effect of a pre-trial order, this does not mean that it must be rigidly and pointlessly adhered to at trial. *Whisman v. Fawcett,* 470 N.E.2d 73, 76 (Ind.1984).

The pre-trial order entered in the present case does not refer to any contention that U.S. Can was properly a party to the trial. Neither does it mention any claim of indemnity by Rust–Oleum against U.S. Can. Indeed, the pre-trial order states that Rust–Oleum "added [U.S. Can] as a party to this lawsuit to assist in defending against the claims made by the plaintiffs." App. at 29. However, the pre-trial order does contain the defenses U.S. Can intended to assert against the Fitzes' claims against Rust–Oleum. The pre-trial order thus seemed to anticipate U.S. Can's participation in the trial. Yet, if no third-party claim of indemnification existed between Rust–Oleum and U.S. Can, then U.S. Can would have no reason to be in the trial pursuant to T.R. 14(A).

■ Rust–Oleum argues that merely because the issue of indemnification was to be tried separately from that of its liability to the Fitzes does not mean that U.S. Can could not opt to defend against the Fitzes' claims. This argument, however, presumes that the issue of indemnification was to be tried separately, not abandoned entirely. Although the third-party complaint may have properly impleaded U.S. Can, a pre-trial order delineating the issues of the case supplants the allegations raised in the pleadings and controls all subsequent proceedings in the case. *See Marotta v. Iroquois Realty Co.,* 412 N.E.2d 797, 799 (Ind.Ct.App.1980). The issues become those contained in the pre-trial order. *Id.* Here, the pre-trial order simply did not present or preserve any

claim of indemnification. This does not mean that an indemnity claim is necessarily precluded, if it is otherwise preserved. Nevertheless, we can find no support for Rust–Oleum's claim that the parties agreed to try the issue of indemnity separately from that of the Fitzes' claims. That being said, the question of U.S. Can's role in the trial remains open.

In the pre-trial order, U.S. Can maintained the defense of misuse and alleged that the can was properly manufactured. With no claims being brought against it by the Fitzes, the only way that U.S. Can could assert any defenses was through its status as a potential indemnitor and third-party defendant under T.R. 14, a status it no longer maintained after the pre-trial order failed to preserve this issue.

Rust–Oleum's argument that U.S. Can was required to act as a "co-defendant" must also be rejected. Even if the indemnity claim against U.S. Can had properly been preserved, U.S. Can was under no obligation to assert any defenses to the Fitzes' claims against Rust–Oleum. Trial Rule 14(A) does not speak in mandatory terms. Instead, it speaks to what a third-party defendant *may* do, not what it must do. U.S. Can initially appeared prepared to exercise its option to assert a defense against the Fitzes' claims. However, when Rust–Oleum's trial counsel mentioned the indemnification claim in his opening statement, U.S. Can objected, noting that the indemnification claim had not been properly preserved in the pre-trial order. Any question of whether the indemnification claim was preserved was resolved when Rust–Oleum's trial counsel continued his opening statement:

"I misspoke. I'm sorry. We're not claiming that [i.e. indemnification]. *If the can was defective they don't owe us anything.* Okay. We do want them in here to help us defend the case. *We are*

*not making that claim."* App. at 82 (emphasis supplied).

This statement makes it clear that Rust–Oleum was not seeking indemnification from U.S. Can in the present case, but rather was seeking U.S. Can's assistance in defending the Fitzes' claims. U.S. Can had not been joined as a party other than as a third-party defendant. With the third-party claim gone, U.S. Can was no longer a proper party to the litigation in progress.

Rust–Oleum's contentions that U.S. Can's status as a third-party defendant is independent of the indemnity claim is simply incorrect. Without the third-party claim against it, U.S. Can could not have been properly impleaded in the first place. The third-party indemnity claim against U.S. Can having not been preserved in the pre-trial order and apparently abandoned by Rust–Oleum during its opening statements, U.S. Can was no longer a proper party at trial.

Rust–Oleum also claims that the motion to exclude U.S. Can was untimely, citing T.R. 14(C), which states, "With his responsive pleading or by motion prior thereto, any party may move for severance of a third-party claim or ensuing claim as provided in this rule or for a separate trial thereon...." Because the motion to exclude was made on the second day of trial, Rust–Oleum claims that the trial court acted outside the time limits set forth in T.R. 14(C). The Fitzes counter that T.R. 14(C) speaks to instances in which impleader itself is improper. As noted, the Fitzes do not claim that impleader was improper based upon Rust–Oleum's third-party complaint, but claim that after the pre-trial order failed to preserve the indemnity claim, U.S. Can was without reason to participate in the trial on the Fitzes' claims. In such a situation, the Fitzes claim that their motion was timely, citing *Dayton Walther Corp. v. Caldwell,* 273 Ind. 191, 402 N.E.2d 1252 (1980).

In *Dayton Walther,* the defendant corporation claimed that the trial court erred in ordering a separate trial upon issues raised by Dayton Walther's third-party complaint because the third party defendant did not request a separate trial until after it had filed its responsive pleading. Dayton Walther insisted that the trial court was without power to order a separate trial outside the confines of T.R. 14(C). Our Supreme Court rejected this construction and held that the fact that the trial court initially permitted Dayton Walther to file a third-party complaint did not prevent the trial court from later reassessing the complexity of the case after the pre-trial conference had clarified the claims and issues. 273 Ind. at 210, 402 N.E.2d at 1263. In support of its holding, the Court cited Indiana Trial Rule 42(B), which provides that the trial court may order a separate trial of any claim, including third-party claims, or of any separate issue, or of any number of claims in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. The Court concluded that the trial court could reasonably have found that the complexities of that particular case would prejudice the parties and was within its discretion to order separate trials. *Id.*

Although the *Dayton Walther* case makes it clear that T.R. 14(C) is not the only means by which a trial court may order a separate trial on a third-party claim, the issue in *Dayton Walther* was the propriety of ordering a separate trial upon the issues raised in the third-party complaint. In the case at bar, the Fitzes' motion sought to remove U.S. Can as a party at the trial, not to separately try the issues. Thus, *Dayton Walther* is not precisely on point. Nevertheless, we find it

instructive on the latitude afforded to a trial court to control the proceedings. As in *Dayton Walther*, the pre-trial order here altered the nature of the case as it had existed based upon the pleadings. Based upon this, the trial court in the present case reassessed the situation before it and correctly observed that no claims remained against U.S. Can, either by the Fitzes or by Rust–Oleum.

Trial Rule 42(B), relied upon by the court in *Dayton Walther*, speaks in terms of separate trials on claims, whereas here the trial court removed a party. Still, Trial Rule 21(A) states, "Subject to its sound discretion and on motion of any party or of its own initiative, the court may order parties dropped or added at any stage of the action and on such terms as are just and will avoid delay."

Here, the pre-trial order was entered on October 22, 2002. The Fitzes moved to remove U.S. Can on October 29, the second day of trial. Their motion was but one day after U.S. Can's objection and Rust–Oleum's admission made it clear that Rust–Oleum was not seeking indemnity from U.S. Can. Rust–Oleum also failed to move for a continuance after U.S. Can was removed from the trial. We therefore reject Rust–Oleum's claims of unpreparedness to defend against the Fitzes' claims. *Cf. Kirtley v. McClelland*, 562 N.E.2d 27, 32 (Ind.Ct.App.1990) (where appellant claimed surprise when trial court permitted appellee to proceed upon theory outside the pleadings, court upon appeal, citing Trial Rule 15(B), held that appellant's failure to request continuance precluded claim of prejudice).

In sum, we cannot say that the trial court erred when it removed U.S. Can from the trial given that the pre-trial order did not preserve the indemnity claim against U.S. Can and that Rust–Oleum stated during its opening statement that it was not seeking an indemnity claim. Moreover, any claim of prejudice based upon unfair surprise could have been avoided by Rust–Oleum requesting a continuance, which Rust–Oleum failed to do.

Rust–Oleum's next contention of error is that the trial court erred in granting the Fitzes' motion to strike the juror affidavit submitted in support of its motion to correct error. The motion to correct error alleged error in the trial court's removal of U.S. Can from trial resulting in prejudice to Rust–Oleum. The juror affidavit was submitted in support of Rust–Oleum's claim of prejudice. As we have already determined that the trial court did not err in removing U.S. Can from trial, we need not address whether Rust–Oleum was prejudiced by something that was not error.[2]

Rust–Oleum also requests that we hold that U.S. Can is bound by the judgment entered against Rust–Oleum. Rust–Oleum correctly notes that courts in several jurisdictions have held that a third-party defendant is bound by the judgment entered against the defendant/third-party plaintiff. *See e.g. Knell v. Feltman*, 174 F.2d 662 (D.C.Cir.1949). Here, U.S. Can was no longer a proper third-party defendant, and these cases are not on point. We also note that Rust–Oleum's argument presumes that some indemnity action still exists against U.S. Can, a contention we have rejected, at least with regard to the

---

**2.** We also reject Rust–Oleum's claim that prejudice should be presumed when the trial court fails to follow a mandate of the Trial Rules. *See Carroll v. Statesman Ins. Co.*, 493 N.E.2d 1289, 1294 (Ind.Ct.App.1986), *trans.* *granted, vacated on other grounds, adopted in relevant part* 509 N.E.2d 825 (Ind.1987). The trial court here did not fail to follow a mandate of the trial rules.

present cause.[3] Rust–Oleum does cite *Bothmann v. Harrington,* 458 So.2d 1163, 1167 (Fla.3d Dist.Ct.App.1984), which, although involving a third-party defendant, recites a more general proposition that "a potential indemnitor ... is bound by a judgment rendered against an indemnitee when the indemnitor is on notice and is not precluded from defending in the action." Be that as it may, whether or not U.S. Can will be required to indemnify Rust–Oleum is not an issue before us upon appeal. This issue has not yet been litigated at the trial court level. When and if Rust–Oleum attempts to re-assert an indemnity claim against U.S. Can, it might then argue that U.S. Can is bound by the judgment in the current case. The issue is not now before us. *See Cuto v. State,* 709 N.E.2d 356, 365 (Ind.Ct.App.1999).

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

**3.** Rust–Oleum's comments in its opening statement could be read to mean that it had either given up entirely on its indemnity claim or that they were simply no longer pursuing the indemnity claim in the current action.