Henry C. WOODWARD, Appellant–
Defendant,

v.

HERITAGE CONSTRUCTION
COMPANY, INC., Appellee–
Plaintiff.

No. 71A03–0709–CV–433.

Court of Appeals of Indiana.

June 6, 2008.

Robert T. Sanders III Sanders Pianow-ski, LLP Elkhart, IN, Attorney for Appellant.

Bruce D. Huntington Botkin & Hall, LLP South Bend, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Henry C. Woodward appeals the trial court's orders in favor of Heritage Construction Company's ("Heritage's") action to foreclose on a mechanic's lien and request for attorney's fees and costs. Woodward also appeals the court's denial of his motion to amend the pleadings to conform with the evidence. Woodward raises three issues for our review, which we restate as follows:

1. Whether the trial court abused its discretion when it denied Wood-

ward's request to amend the pleadings to conform to the evidence, which would have permitted Woodward to argue an otherwise unraised affirmative defense.

2. Whether the court's finding that Heritage's mechanic's lien had been timely filed was clearly erroneous.

3. Whether the court abused its discretion in the admission of evidence pertaining to Heritage's attorney's fees.

On cross-appeal, Heritage raises the following issue: whether the trial court erroneously denied Heritage's request for prejudgment interest.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In December of 2004, Woodward purchased a home in Granger, Indiana. Woodward intended to reside at that residence with Kathy Andrews [1] and their children from prior relationships, but the home was in need of extensive repair. So in January of 2005, Woodward and Andrews met with Heritage. The parties entered into an oral agreement for the repair of the home, with Woodward agreeing to pay time and materials along with a ten percent markup.

Heritage suggested a renovation plan that could have been completed by April of 2005, but Woodward and Andrews refused that plan. Instead, Woodward and Andrews chose other plans and, during the course of the construction, changed their plans multiple times. Eventually, Woodward and Andrews assumed control of the overall project, which led to delays not attributable to Heritage.

In June of 2005, the relationship between Woodward and Andrews and Heritage began to break down. On June 1, Heritage tendered to Woodward an invoice for "Services Rendered" in the amount of $50,000, which included prior unpaid sums from March and April. Appellant's App. at 274. On June 6, Woodward paid $16,000 to Heritage. On June 8, Heritage informed Woodward in writing that, the June 6 payment notwithstanding, his failure to pay adequately the funds due would result in Heritage's withdrawal of its employees from the worksite "at the end of this week." *Id.* at 278. On June 10, the ensuing Friday, Heritage pulled its workers from the renovation project. However, throughout the next week, Heritage continued to provide labor and materials to the project. On June 17, Woodward paid to Heritage an additional sum of $14,000. Heritage "continued to render valuable services on a sporadic basis up until July 22, 2005." *Id.* at 9. Following those services, Heritage withdrew itself from the project.

In July of 2005, Woodward hired TAZ Construction ("TAZ") to complete the renovation project, which it did on October 28, 2005. On August 9, 2005, Heritage filed a notice of intent to hold a mechanic's lien against Woodward's property for the unpaid balance of its work on that property. On September 16, Heritage filed an action to foreclose on that lien in the amount of $43,344.87. In his responsive pleading, Woodward did not raise the Indiana Home Improvement Contracts Act ("HICA"), Ind.Code § § 24–5–11–1 to –14 (2004), as an affirmative defense, but instead "reserve[d] the right to assert other affirmative defenses[ ] as such defenses become known during the course of investigation

---

1. The reference to Andrews as Woodward's "paramour" by Heritage's appellate attorney is unappreciated and unprofessional. *See* Ind. Professional Conduct Preamble, ¶¶ 1, 7; Appellee's Brief at 9.

and discovery herein," Appellant's App. at 60.

Following a bench trial, on August 2, 2007, the court entered an order granting Heritage's request to foreclose on its mechanic's lien ("August 2 Order"). In that Order, the court specially found that Heritage had continued to render valuable services to Woodward through July 22, 2005, and that Heritage's mechanic's lien had been timely filed.[2] The court then ordered a separate hearing on attorney's fees, which the court held on August 22 ("August 22 Hearing"). At that hearing, Woodward moved to amend the pleadings to conform to the evidence and incorporate an additional affirmative defense under HICA ("Motion to Amend"). Heritage "strenuously" objected, and the court denied the Motion to Amend. *Id.* at 247. On August 23, the court awarded Heritage $53,700 in attorney's fees and costs ("August 23 Order"). The court also ordered Woodward to pay post-judgment interest, but did not state whether Heritage was entitled to prejudgment interest. This appeal ensued.

## DISCUSSION AND DECISION

Woodward appeals the trial court's denial of his Motion to Amend, the August 2 Order, and the August 23 Order. In particular, Woodward asserts the following: (1) that the court's denial of his Motion to Amend is reversible error; (2) that Heritage's notice of intent to hold a mechanic's lien was not timely filed; and (3) that the court abused its discretion in hearing evidence of Heritage's attorney's fees. On cross-appeal, Heritage asserts that the court erred in not awarding prejudgment interest. We address each argument in turn.

### Issue One: Motion to Amend

Woodward first asserts that the trial court committed reversible error when it denied his Motion to Amend. Specifically, Woodward alleges that "[s]ince the evidence presented at trial established the factual foundation for application and enforcement of [HICA], the failure to grant Woodward's motion and to enforce Indiana law constitutes reversible error." Appellant's Brief at 14. We cannot agree.

It is true that "Indiana courts have liberally applie[d] [Trial Rule] 15(B) to permit amendment of pleadings *at any point* in the proceedings where the parties have consented, as attested by the evidence admitted *without objection,* to a trial upon issues *not raised by the pleadings.*" *Midway Ford Truck Ctr., Inc. v. Gilmore,* 415 N.E.2d 134, 137 (Ind.Ct.App.1981) (emphasis in original). However, a trial court should not grant a motion to amend where "the objecting party establishes that amendment would prejudice him in maintaining his action or defense." *Colonial Mortgage Co. v. Windmiller,* 176 Ind.App. 535, 542 n. 3, 376 N.E.2d 529, 534 n. 3 (1978). We review a trial court's ruling on a motion to amend the pleadings to conform to the evidence for an abuse of discretion. *See Schoemer v. Hanes & Assocs., Inc.,* 693 N.E.2d 1333, 1340 (Ind.Ct.App.1998).

In light of the trial court's factual findings, Woodward asserts that HICA provided him with a cognizable defense against Heritage's claims and, as such, he

---

**2.** The court also noted that "Woodward has failed to prove its counterclaim and has made spurious arguments for damages that are vexatious and unsupported by the evidence and constitutes obdurate behavior." Appellant's App. at 10. We remind Woodward's counsel of Indiana Professional Conduct Rule 3. 1, which states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous...."

should have been permitted to amend his pleadings to conform to the evidence and assert his new defenses. HICA "requires home improvement suppliers performing any alteration, repair, or modification to a residential home property in an amount greater than $150.00 to provide the customer with a home improvement contract." *Benge v. Miller*, 855 N.E.2d 716, 720 (Ind. Ct.App.2006). HICA also requires certain provisions to be included in that contract before it is signed by consumers. *Id.* "The purpose of [HICA] is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts." *Id.* (citing *Cyr v. J. Yoder, Inc.*, 762 N.E.2d 148, 150 (Ind.Ct.App.2002)).

 Woodward was not entitled to conform his pleadings at the end of the trial to add an unlitigated defense under HICA. Amendments of the pleadings to conform to the evidence are permissible only when the parties have consented to and litigated issues not originally raised by the pleadings. *See Midway Ford Truck Ctr.*, 415 N.E.2d at 137; see also Ind. Trial Rule 15(B) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Such amendments are not a procedural tool to reopen litigation. Here, HICA was not litigated by the parties either expressly or impliedly, and Heritage objected to Woodward's Motion to Amend.

Further, Woodward's purpose behind the Motion to Amend was to have the trial court find "that Heritage violated the provisions of [HICA]." Appellant's Brief at 13. Accordingly, granting Woodward's motion over Heritage's objection would have prejudiced Heritage in its action and was

therefore impermissible. *See Colonial Mortgage*, 376 N.E.2d at 542, n. 3. The trial court did not abuse its discretion in denying Woodward's Motion to Amend.[3]

### Issue Two: Mechanic's Lien

 Woodward next asserts that Heritage's notice of an intent to hold a mechanic's lien was not filed within sixty days after Heritage last performed labor at or furnished material to the residence. "[W]here[,] as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), ... [t]he trial court's findings and conclusions will be set aside only if they are clearly erroneous." *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind.2002). A judgment is clearly erroneous if the evidence does not support the trial court's findings or if those findings do not support the judgment. *See id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Bank of Am. v. Ping*, 879 N.E.2d 665, 669 (Ind.Ct.App.2008).

Indiana law requires "[a] person who wishes to acquire a lien upon a property ... [to file a] notice of the person's intention to hold a lien upon the property ... not later than sixty (60) days after performing labor or furnishing materials...." I.C. § 32–28–3–3(b)(2). Here, the trial court specially found that Heritage "continued to render valuable services on a sporadic basis up until July 22, 2005." Appellant's App. at 9. That finding is supported by the time sheets of Heritage's employees, which were submitted to the trial court. And it is not disputed that Heritage filed the notice of its intent to hold a lien against Woodward's property on August 9, 2005, eighteen days after

---

**3.** Because we hold that the trial court did not err in denying Woodward's Motion to Amend, we need not address Woodward's additional contention that, in light of HICA, the court erred in awarding damages to Heritage.

Heritage last rendered services to Woodward. Accordingly, the court's findings support its judgment, and we cannot say that the court's conclusion that Heritage timely filed its lien is clearly erroneous.[4]

### Issue Three: Evidence of
### Attorney's Fees

Finally, Woodward argues that the trial court abused its discretion in admitting evidence of Heritage's attorney's fees during the August 22 Hearing. Specifically, Woodward notes that the parties had agreed, in a pretrial order, as to the documents each party would seek to admit at trial, and that any evidence not specifically listed in the pretrial order would be excluded from trial. That pretrial order did not list any evidence of Heritage's attorney's fees. The court entered the pretrial order on April 23, 2007, and, during the ensuing trial, Heritage did not submit to the court evidence of its attorney's fees. Rather, after having rested its case, Heritage requested the court to "reopen" Heritage's case and schedule a later hearing on its attorney's fees. *Id.* at 277–78. The court agreed to do so. Accordingly, Woodward continues, the court erred in admitting evidence of Heritage's attorney's fees at the ensuing August 22 Hearing. We cannot agree.

■■■■■■ "[T]he purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and . . ., once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice." *Hamlin v. Sourwine*, 666 N.E.2d 404, 409 (Ind.Ct.App.1996) (citing T.R. 16(J)). In considering whether to permit a modification of the pretrial order,

the trial court considers both the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. *Daub v. Daub*, 629 N.E.2d 873, 875 (Ind.Ct.App.1994), *trans. denied.* The court may also consider the extent to which permitting a late amendment will disrupt an orderly and efficient trial of the case or of other cases in the court and whether there has been bad faith or willfulness in failing to comply with the court's existing order. *Id.* The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been submitted in a list of witnesses and exhibits is committed to the discretion of the trial court. *Id.* "Although we recognize the binding effect of a pretrial order, this does not mean that it must be rigidly and pointlessly adhered to at trial." *Rust–Oleum Corp. v. Fitz*, 801 N.E.2d 754, 758 (Ind.Ct.App.2004) (citing *Whisman v. Fawcett*, 470 N.E.2d 73, 76 (Ind.1984)), *trans. denied.*

Here, the following colloquy took place during the bench trial, after Heritage had rested its case:

MR. HUNTINGTON [for Heritage]: One other issue, your Honor, is that part of our claim is made under the Indiana Mechanic's [L]ien Statute, which calls for attorney fees.

THE COURT: Hm-hmm.

MR. HUNTINGTON: We have taken no testimony with regard to attorney fees. Do you want that by affidavit? Or, do you want to treat that in some other way?

THE COURT: Well, again, it's not what I want. It's what you want to offer. If you have a stipulation to use an affidavit.

---

4. Woodward's argument that Heritage's work between June 9, 2005, and July 22, 2005, was so substandard as to not qualify for services rendered under Indiana Code Section 32–28–3–3(b)(2) is contrary to the court's finding that Heritage rendered "valuable services." *See* Appellant's App. at 9. As such, that argument is merely a request for this court to reweigh the evidence, which we will not do. *See Bank of Am.*, 879 N.E.2d at 669.

Or, if you want live testimony. I mean, that's something—

MR. HUNTINGTON: We have—

THE COURT:—You have to decide.

MR. HUNTINGTON: My preference would be to provide material by affidavit, as opposed to—We don't know what's going to happen post-trial, yet.

THE COURT: All right. Are you going to propose some stipulation, then? What are you asking?

MR. HUNTINGTON: I would propose that we stipulate to that. But, counsel has to agree.

MR. SANDERS [for Woodward]: Well, this is going to be a matter of contention. There hasn't been any evidence presented, any documents, any exhibits, with respect to attorney's fees. And, that's an essential element of proof of the Plaintiff. The pretrial order specifically provided that documents which had not been identified, could not be introduced. And, there will be an issue with respect to that.

THE COURT: Well, it sounds like you are going to have to testify. So, you are asking to re-open?

MR. HUNTINGTON: Just reopen. Reopen for the purpose ... [of] simply putting on testimony as to the mechanic's lien.

THE COURT: Well, I would grant that. So, we would have to deal with it at some point. Do you want to just get through most of the case and then re-open on that issue at the end?

MR. SANDERS: Well, I guess[ ] that makes more sense, your Honor. I still don't have any documents or any supporting information. And, of course, there are evidentiary requirements with respect to attorney's fees. And, so, those are all going to be at issue, whether we take it up now—

THE COURT: Okay.

MR. SANDERS:—Or take it up later.

THE COURT: You know, we can take it up on another day, if we have to, without counsels' clients present. All right. I'll grant your request to reopen your case for the issue of attorney's fees. And, we'll figure out on when to schedule that. Okay?

MR. SANDERS: Okay.

Appellant's App. at 210–11.

■■■ The trial court did not abuse its discretion in permitting Heritage to deviate from the pretrial order for the purposes of demonstrating its attorney's fees. As Heritage rightfully informed the trial court, "if a mechanic's lienholder recover[s] judgment 'in any sum' he [is] entitled [by statute] to recover reasonable attorney's fees." *See Clark v. Hunter,* 861 N.E.2d 1202, 1210 (Ind.Ct.App.2007) (quoting *Clark's Pork Farms v. Sand Livestock Sys., Inc.,* 563 N.E.2d 1292, 1300 (Ind.Ct. App.1990)). Thus, permitting Heritage to proceed with evidence of its attorney's fees enabled the court to do justice on the merits of Heritage's claim against Woodward. And by ordering a separate, later hearing on the issue of attorney's fees, the court mitigated any surprise or disruption that may have resulted from Heritage's request. Notably, Woodward does not assert that Heritage's request to reopen its case was in bad faith.

Woodward also does not demonstrate how Heritage could have prepared evidence of its attorney's fees before trial, nor does he discuss on appeal any particular objection he had to the evidence Heritage eventually submitted to the trial court. Rather, Woodward's pursuit of this issue is nothing more than an attempt to use Trial Rule 16 in an overly rigid manner in order to deny Heritage a statutory entitlement. *See id.* at 1210–11. Again, "[a]lthough we

recognize the binding effect of a pretrial order, this does not mean that it must be rigidly and pointlessly adhered to at trial." *Rust–Oleum Corp.*, 801 N.E.2d at 758 (citing *Whisman*, 470 N.E.2d at 76). Accordingly, the court acted within its discretion in proceeding on the issue of Heritage's attorney's fees. See *Daub*, 629 N.E.2d at 875.

### Cross–Appeal

 On cross-appeal, Heritage asserts that the trial court erred in not entering an award for prejudgment interest. We recently discussed the trial court's discretion in entering prejudgment interest as follows:

> "[T]he award of prejudgment interest is generally not a matter of discretion." *[Johnson v. Blankenship*, 679 N.E.2d 505, 509 (Ind.Ct.App.1997) ]. However, as we stated in *Harlan Sprague Dawley, Inc. v. S.E. Lab Group*, 644 N.E.2d 615, 617 (Ind.Ct.App.1994), *trans. denied*:
>
>> [Appellant] HSD asks that we review de novo the trial court's award of prejudgment interest, based on language found in Indiana cases stating that "an award of prejudgment interest is generally not considered a matter of discretion." However, in previous cases we have reviewed the award of prejudgment interest under the abuse of discretion standard.
>>
>> The cases cited by HSD hold that prejudgment interest is not a matter of discretion only after the trial court determines that the damages can be ascertained by mathematical computation.
>
> (Citations omitted.) In other words, "the award is proper where the trier of fact need not exercise its judgment to assess the amount of damages." *J.S. Sweet Co. v. White County Bridge Comm'n*, 714 N.E.2d 219, 225 (Ind.Ct.

App.1999). And as we have further clarified:

> We note that the crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. An award of prejudgment interest is proper only where a simple mathematical computation is required. Damages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest.

> *Bopp v. Brames*, 713 N.E.2d 866, 872 (Ind.Ct.App.1999) (citations omitted), *trans. denied.*

*Clark*, 861 N.E.2d at 1207–08 (third alteration original).

Here, Heritage asserts that it was a matter of simple calculation for the trial court to determine prejudgment interest. We cannot agree. The parties' claims required the trial court to exercise its discretion in determining the value of the services rendered by Heritage and not paid by Woodward. Indeed, in declining Heritage's request for prejudgment interest at the August 22 Hearing, the trial court expressly acknowledged legitimate areas of dispute between the parties' contractual obligations and having "to decide [those disputes] based on credibility and weighing the evidence." Appellant's App. at 250. Accordingly, the court did not abuse its discretion in denying Heritage's request for prejudgment interest. See *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 578 (Ind.Ct.App.2003) ("The award [of prejudgment interest] is considered proper when the trier of fact need not exercise its judgment to assess the amount of damages."), *trans. denied.*

## Conclusion

In sum, the trial court did not err in denying Woodward's Motion to Amend, in finding Heritage's notice of its intention to hold a mechanic's lien timely filed, or in permitting Heritage to proceed with evidence of its attorney's fees even though Heritage had rested its case. Further, the court did not abuse its discretion in denying Heritage prejudgment interest. Accordingly, we affirm the trial court in all respects.

Affirmed.

DARDEN, J., and BROWN, J., concur.